UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

UNITED STATES OF AMERICA                  CIVIL ACTION NO. 66-12071

VERSUS                                    JUDGE ROBERT G. JAMES

LINCOLN PARISH SCHOOL BOARD,              MAG. JUDGE KAREN L. HAYES
ET AL.

RULING

Pending before the Court is a Motion for Relief under the All Writs Act [Doc. No. 62] filed by the United States of America, Department of Justice ("DOJ").  DOJ has moved the Court under the All Writs Act, 28 U.S.C. §1651, to compel a non-party, the Louisiana Department of Education ("LDOE"), to provide responses to interrogatories and requests for production related to the State's private school scholarship program.[1]  On January 18, 2013, the LDOE filed a memorandum in opposition [Doc. No. 66] to the DOJ's motion.

For the following reasons, the DOJ's motion is GRANTED IN PART and DENIED IN PART as MOOT, and the LDOE is hereby ORDERED to provide responses to Interrogatories Nos. 1-5 and 8 and Request for Production No. 1, to the extent not already provided, no later than March 1, 2013.  The motion is DENIED as MOOT as to Interrogatories Nos. 6 and 7, subject to the right of the DOJ to re-propound these interrogatories at a later date.

I.       BACKGROUND AND PERTINENT FACTS

The desegregation case has been pending since June 8, 1966.  The original consent decree was entered by the Honorable Ben C. Dawkins, Jr., on August 1, 1969.  Under the decree, the

_____

[1]Since the motion was filed, the DOJ was able to obtain some information from the School Board, but that information does not moot the DOJ's motion.

Lincoln Parish School Board ("School Board") agreed to take the following remedial measures:

(1)     Allowing student transfers in only the following situations:

        A.     When a student in the majority race at his school transfers to a school where he will be in the minority race;

        B.     When a student requires a course of study not offered at the school to which he has been assigned and transfers to a school which offers courses for his special needs;

        C.     When a student is physically handicapped, mentally retarded, or gifted and transfers schools or classes because another school or class will be better equipped to accommodate him;

        D.     All transfers must be granted on a non-discriminatory basis and may not reduce desegregation or reinforce the dual school system.

(2)     Forbidding segregation or discrimination on account of race or color in any service, facility, activity, or program, including transportation, athletics, and other extracurricular activities, conducted or sponsored by the school.

(3)     Equalizing schools formerly maintained for African-Americans and creating remedial programs for students who previously attended segregated schools to overcome past inadequacies in their education.

(4)     Conducting all school construction, school consolidation, and site selection so as to eliminate the existence of the dual school system and its recurrence.

(5)     Desegregating faculty and staff and employing all principals, teachers, teacher-aides, and staff on a nondiscriminatory basis.

(6)     Requiring the Lincoln Parish School Board to file an annual report, tracking the racial makeup of employees and students at each school, as well as filing a report when construction plans were submitted to the school board.

The decree has been modified several times through the years to permit the implementation of a majority-to-minority transfer policy, to provide for the examination of the transportation system, to create a bi-racial committee, to consolidate schools, to modify reporting requirements, and to

2

change attendance zones.

Since 1984, the Court has considered actions necessary to address the two laboratory schools located in Lincoln Parish: the Grambling laboratory school (Alma J. Brown Elementary, Grambling Middle School, and Grambling High School) and the A.E. Phillips Laboratory School.[2] On October 8, 1984, the Honorable Thomas E. Stagg, Jr., issued a consent decree which set forth a plan to desegregate the two schools.

For more than forty years, the School Board has provided statistical reports to the Court, requested authorization for any actions which could affect desegregation, and the DOJ has monitored the School Board's desegregation efforts.  In late 2009, the Court began meeting with the parties in all active desegregation cases in the Monroe Division to determine the actions necessary for the districts to obtain unitary status and for the cases to be finally resolved.  Consistent with that goal, on December 14, 2009, the Court held a status conference with the parties in this case and, acting *sua sponte*, ordered the DOJ to conduct a unitary status review of the District.  *See* [Doc. No. 8]. Since that time, the Court, the School Board, the DOJ, and the laboratory schools have been engaged in on-going efforts to resolve the remaining desegregation issues.  Nevertheless, as of this date, the case remains open and active.

In April 2012, during the Regular Session, the Louisiana Legislature enacted legislation known as the  Student Scholarships for Educational Excellence Act, implemented through Act No.

_____

[2]Alma J. Brown Elementary School, Grambling Middle School, and Grambling High School are all associated with Grambling State University and are racially identifiable as black schools.  A.E. Phillips School is associated with Louisiana Tech University and is racially identifiable as a white school.  While these laboratory schools are physically located in Lincoln Parish, they may draw students from the entire state, not just Lincoln Parish.

2.  *See* LA. REV. STAT. ANN. §§ 17:4011-4025.  The state scholarship program ("the Program") allows students in Louisiana parishes who (1) have family incomes below 250% of the poverty line and (2) are enrolled in a school that received a grade of "C" or lower on LDOE's accountability scale to attend participating private schools or certain high-performing public schools.  *See* LA.REV.STAT. ANN. §§ 17:4013,:4018.  For any student who participates in the Program, Minimum Foundation Program ("MFP") funds, state funds intended for public education, follow the student to the new school. *See id.* § 17:4016.

On May 24, 2012, the Court approved the Superseding Consent Order [Doc. No. 55] in this case, requiring the School Board to take additional actions to comply with its student assignment obligations, as well as retaining its duty to eliminate the vestiges of *de jure* segregation.

In Lincoln Parish, there are thirteen schools which received a grade of "C" or lower: Choudrant Elementary School, Cypress Springs Elementary School, Dubach High School, Glen View Elementary School, Hico Elementary School, Howard School, I.A. Lewis School, Ruston Elementary School, Ruston Junior High School, Simsboro High School, Alma J. Brown Elementary School, Grambling Middle School, and Grambling High School.   Any student who attends these schools and whose family meets the income requirement is eligible to participate in the Program.

Prior to filing its motion, the DOJ requested information and documentation from the LDOE related to the Lincoln Parish students who applied for and/or are participating in the Program, as well as information on the schools participating in the Program.  The LDOE refused to provide the information, citing the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. The LDOE contends that release of the information and documentation without a subpoena or court order would potentially violate FERPA and jeopardize its federal education funding.

4

After its unsuccessful attempt to obtain the information from the LDOE, the DOJ filed the instant Motion for Relief Under the All Writs Act. [Doc. No. 62].  The DOJ attached its interrogatories and request for production to the motion.  The LDOE filed a memorandum in opposition to the motion. [Doc. No. 66].

After filing the motion, with the Court's assistance, the DOJ was able to obtain some information from the School Board, which had been provided to the School Board by the LDOE.  This information was not fully responsive, however, to the DOJ's discovery requests.  Therefore, the DOJ continued to pursue its motion.

On January 30, 2013, in a joint conference with the Court's law clerk, the DOJ and the LDOE reported that they had met and discussed the pending motion.  In order to resolve the motion, the DOJ agreed to withdraw its Interrogatories Nos. 6 and 7, to which the LDOE raised relevancy objections, subject to the DOJ's right to re-propound those interrogatories at a later date.  In response to the DOJ's Interrogatory No. 8 requesting funding information on the Program, the LDOE had provided a deposition used in another recent case.  With regard to the remaining interrogatories and request for production, the LDOE still contends that the release of the information and documents is prohibited by FERPA and that it cannot act without a subpoena or court order.

Subject to the agreements set forth above, the DOJ's motion remains pending before the Court.

## II.    ALL WRITS ACT

The All Writs Act provides "power [to] a federal court to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172

5

(1977); *see also* 28 U.S.C. § 1651(a).  This power extends to non-parties "when their conduct frustrates the court's order."  *Moore v. Tangipahoa Parish Sch. Bd.*, No. 12-31218, 2013 WL 141791, at *6 (5th Cir. Jan. 13, 2013) (citing *N.Y. Tel.*, 434 U.S. at 174).  For a district court to act, three elements must be satisfied.  "First, 'the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires.'"  *Id.* (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (alteration in original)).  "When alternative means of relief are available, the court should not issue a writ."  *Id.*  "Second, the party seeking the writ must meet its 'burden of showing that [its] right to issuance of the writ is clear and indisputable.'"  *Id.* at *6-7 (quoting *Cheney*, 542 U.S. at 381 (citation and internal quotation marks omitted)).  "Third, assuming the petition meets the first two requirements, a court should exercise discretion before issuing a writ to ensure it 'is appropriate under the circumstances.'"  *Id.* at *7 (quoting *Cheney*, 542 U.S. at 381) (citation omitted)).

In this case, the DOJ contends that the Court has jurisdiction over this on-going desegregation case, that it is entitled to obtain the requested information and documents from the LDOE as part of its duties in this case, and that it is unable to obtain the information and documents because of the LDOE's FERPA assertion.  In response, the LDOE contends that the Court lacks jurisdiction to consider the All Writs Motion or should abstain under the *Pullman* doctrine based on the Fifth Circuit's recent decision in *Moore*.  Alternatively, the LDOE contends that the Court should deny the DOJ's motions because (1) the release of the information would violate FERPA, which would threaten federal funding for the State; (2) the information sought is irrelevant to its stated purpose; and (3) the information has been provided or is readily available to the public.

6

A.      **Jurisdiction**

First, the Court must consider the jurisdictional question, which was recently addressed in an unpublished Fifth Circuit decision.  In *Moore*, the desegregation plaintiffs and the Tangipahoa School Board filed an All Writs motion, seeking injunctions against the LDOE to stop the further implementation of certain provisions of Act 1 and 2 of the 2012 Regular Session of the Louisiana Legislature, including the Program.  Following a November 26, 2012 hearing, the Honorable Judge Ivan Lemelle granted the motion.  On November 28, 2012, Judge Lemelle entered an order enjoining the provisions of Acts 1 and 2, including the Program, in Tangipahoa Parish.  The following day, Judge Lemelle denied the State's request for a stay.  The State then appealed the denial of the motion to stay to the Fifth Circuit.

On appeal, a Fifth Circuit panel considered the limited issue of whether the portion of the injunction addressing the scholarship monies should be stayed pending appeal.[3]  Over Judge James L. Dennis' dissent, the panel determined that the motion to stay should be granted because the State had shown a likelihood of success on the merits of its arguments that there is a lack of jurisdiction under the Eleventh Amendment, the district court should have abstained under the *Pullman* Doctrine, and/or there was a lack of evidence whether the district court had authority to act under the All Writs Act.

While the Eleventh Amendment analysis is inapplicable to this case, the Court has considered the remainder of the panel's analysis.  The *Moore* panel determined that the State had shown a likelihood of success on the merits of its argument that the district court lacked jurisdiction under

_____

[3]The State did not move to stay Judge Lemelle's decision on the portions of the Act pertaining to teacher accountability and tenure.

7

the All Writs Act because the Tangipahoa Parish School Board and the individual plaintiffs had alternative means of seeking relief from the Louisiana Legislature in the form of additional funding or repeal of the Program, or they could have availed themselves of relief in state court.  *Id.* at *6. The Fifth Circuit took note that "proceedings in the state court already suggest that alternative relief would be available in light of a recent decision from a state district court holding that the Program's disbursement of education funds to private institutions violates Louisiana's state constitution." *Id.* (citing *La. Fed'n of Teachers v. Louisiana,* No. 612,733, slip op. at 2 (19th La. Dist. Nov. 30, 2012)).

The Fifth Circuit panel further concluded that the State has a "strong argument" that Tanigpahoa School Board and the individual plaintiffs have not established their "clear and indisputable" right to the writ.  The plaintiffs had argued that the loss of funding to the district because of the Program would adversely affect the ability of the Tangipahoa Parish School Board to comply with the consent decree, but presented only general financial data and budgets and a few specific budget needs unrelated to schools affected by the Program.  The Fifth Circuit concluded that the evidence presented was speculative and failed to demonstrate immediate irreparable harm warranting relief.

Finally, the Fifth Circuit panel concluded that the State has made a strong showing that it is likely to succeed on the merits of the argument that the district court's reliance on the All Writs Act was not appropriate based on the circumstances.  *See id.* at *7-8.   The panel noted that a decision by the Louisiana Supreme Court on the pending state court action that the Program is unconstitutional would "render this federal action moot."  *Id.* at *8.

While *Moore* is instructive, the facts and circumstances of this case stand in stark contrast to it.  Unlike the *Moore* plaintiffs, the DOJ can meet its burden as to the first element because it does

8

not have alternative means of obtaining the remedy it seeks.  The DOJ cannot seek relief from the

Louisiana Legislature, nor would its participation in the state court action, even if appropriate,

provide the remedy it seeks.[4]  Further, the DOJ has obtained all information available to it through

the School Board and through public sources.  The DOJ made an appropriate request to the LDOE,

but was denied the discovery responses based on FERPA.[5]

With regard to the second element, the DOJ's right to issuance of the writ is clear and

indisputable.  For more than forty years, the DOJ and the Court have monitored and reviewed the

actions of the School Board to remedy the vestiges of racial discrimination.  Further, the 1984

Consent Order and the 2012 Superseding Consent Order imposed obligations on the School Board,

pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000c, *et seq.*, and the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution.  The DOJ has a

---

[4]The DOJ is not challenging the constitutionality of the Program at this time.  Even if possible, it is neither practical nor reasonable fo the DOJ to join a state court lawsuit merely to obtain information.

[5]On January 30, 2013, Magistrate Judge Wilkinson in the Eastern District of Louisiana issued an order in *Brumfield v. Dodd*, Civil Action No. 71-1316 (E.D. La. 1975).  The *Brumfield* court previously held that it was "unconstitutional for the State of Louisiana to provide assistance to private, racially segregated schools in the form of textbooks, classroom materials and financial assistance for transportation."  *Id.* (June 10, 1985 Consent Decree).  The United States of America obtained injunctive relief against the State, and the June 10, 1985 Consent Decree provided for continuing compliance with and enforcement of the Decree.  In his January 30, 2013 Order, Magistrate Judge Wilkinson granted the motion of the United States of America, through the Civil Rights Division of the DOJ, to compel discovery responses relevant to whether the educational benefits under the Program comply with the *Brumfield* orders and consent decree. Magistrate Judge Wilkinson ordered that the LDOE provide discovery responses on the limited issue by March 1, 2013.  However, Magistrate Judge Wilkinson did not decide the issue of the application of the FERPA exception, finding that his order would supersede the LDOE's objection, and his order is limited to the *Brumfield* issue.  *Id.* (January 30, 2013 Order, at p. 6). The LDOE has since asked for reconsideration of this order, asserting that it had not received timely notice of the motion, so that it could respond.

corresponding duty to monitor the School Board's desegregation efforts under the original and modified orders. Additionally, the DOJ was specifically charged by the Court in December 2009 with conducting a unitary status review, which includes a review of the *Green* factor[6] of student assignment in the District. All parties are currently working with the Court to finally resolve this long-standing case. However, neither the DOJ nor this Court can fully evaluate the current state of desegregation in the District and student assignment without considering the effect of students leaving the system to take part in the Program. The LDOE is the only entity with all the information necessary for that evaluation.

Finally, with regard to the third element, the Court finds that the granting of the motion is appropriate under the circumstances. The DOJ's discovery request is not "entangled in a skein of state law that must be untangled before the federal case can proceed[.]" *Moore*, 2013 WL 141791 at *6 (alteration in original) (citations and internal quotation marks omitted). The DOJ does not seek to enjoin the LDOE from taking any action or to enjoin the application of the Program itself; rather, the DOJ seeks only to obtain information and documents necessary to evaluate the Program's effect on the on-going desegregation case.

The Court must also consider, however, whether it should abstain from ruling on the motion at this time.

### B. The *Pullman* Doctrine

"A federal court should generally abstain from exercising jurisdiction in a matter when an

---

[6]Under *Green v. Cty. Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430 (1968), in determining whether a school board has eliminated the effects of prior discrimination to the extent practicable, the district court considers the following factors: (1) faculty and staff assignments, (2) transportation, (3) extra-curricular activities, (4) facilities, (5) student assignments, and (6) curriculum. *Id.* at 435.

unsettled area of the law has an effect on the outcome of a federal constitutional claim or would render a decision on the federal issue unnecessary."  *Id.* at *5 (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941) (other citation omitted).  In *Moore*, the Fifth Circuit panel determined that a decision by the Louisiana Supreme Court in the pending state action that the Program is unconstitutional would render the federal action enjoining the application of the Program moot.

In this case, however, the Louisiana Supreme Court's decision on the pending state court action would not moot the DOJ's motion, through which it seeks discovery, not injunctive relief.  Regardless of the ultimate decision on the constitutionality of the Program, the DOJ must obtain the information and documents necessary to determine the **current** effect the program is having in a pending desegregation case.  Thus, the Court finds that abstention is not appropriate in this case.

## C.    FERPA and Other Considerations

Although the Court has determined that action is appropriate under the All Writs Act, the LDOE argues against the release of the requested discovery because (1) the release violates FERPA; (2) the requested discovery is irrelevant to its stated purpose; and (3) the requested discovery has been provided or is readily available to the public.  The Court rejects these arguments.

### 1.    FERPA Law Enforcement Exception

Under FERPA, federal education funds will not be made available to "any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information . . . of students without the written consent of their parents to any individual, agency, or organization," other than under certain recognized exceptions.  20 U.S.C. § 1232g(b)(1).  There is no dispute that the DOJ seeks discovery, at least in part, of "education records" or records which would contain "personally

11

identifiable information" under FERPA.  At issue is whether the requested discovery may be released

to the DOJ as "authorized representatives of the Attorney General for law enforcement purposes .

. . ."  20 U.S.C. § 1232g(b)(1)(C)(ii).[7]

In *United States v. Bertie Cty. Bd. Of Educ.*, 319 F. Supp.2d 669 (E.D. N.C. 2004), the

district court was presented with the same issue.  The DOJ sought discovery from the county school

board, which was a party to the case.  The county school board was not opposed to releasing the

information, but was concerned that it was prohibited from doing so by FERPA.  Finding no

definition of "law enforcement" in FERPA, the district court turned to the definition found in

Black's Law Dictionary:

> "The detection and punishment of violations of the law. This term is not limited to
> the enforcement of criminal laws. For example, the Freedom of Information Act
> contains an exemption from disclosure for information compiled for law-enforcement
> purposes and furnished in confidence. That exemption is valid for the enforcement
> of a variety of non criminal laws (such as national-security laws) as well as criminal
> laws. . . . "

*Id.* at 671 (quoting BLACK'S LAW DICTIONARY 891 (7th ed. 1999) (citation omitted)).  The district

court also looked at cases interpreting the term law enforcement under FOIA, 5 U.S.C. § 552, and

found that courts have consistently held that the term encompasses the enforcement of both criminal

and civil statutes.  *Id.* (collecting cases).

Ultimately, the *Bertie* court concluded that the law enforcement exception applied to the

---

[7]The LDOE concedes that if the DOJ issued a subpoena, or this Court issued an order, the
LDOE could be required to release the requested discovery pursuant to 20 U.S.C. § 1232g(b)(2).
That provision of FERPA, however, requires notice to parents and would further and
unnecessarily delay the release.  The Court also finds that it is necessary to address the law
enforcement exception in the interest of judicial economy because the DOJ intends to request the
same type of discovery in other pending desegregation cases, and the Court can only assume that
the LDOE will continue to assert the same argument.

United States' discovery requests because the desegregation case had been filed under Section 407 of the Civil Rights Act of 1964, 42 U.S.C. § 2000c-6(a) and (b) to enforce the Civil Rights Act and achieve § 2000c-6(2)'s goal of desegregation.   The United States was seeking the records to demonstrate that the school board was still in violation of the provision and to enforce compliance with the Act.  *See generally Lopez v. Metro. Gov't. of Nashville and Davidson Cty.*, 594 F. Supp.2d 862, 867 (M.D. Tenn. 2009) (Considering *Bertie* and finding that the DOJ was entitled to obtain documentation of allegations of sexual abuse on school buses from the city and county government under the law enforcement exception to a state confidentiality statute because "it would be anomalous to charge the United States with enforcement of Title IX but, at the same time, preclude it from obtaining information relevant to its enforcement responsibilities.").

The Court agrees with and adopts the analysis of the *Bertie* court.  Applying that analysis, the Court finds that the law enforcement exception to FERPA is applicable to the DOJ in this case based on its continuing duty to monitor the School Board's desegregation efforts and to complete a unitary status review.  The information and documentation that the DOJ seek from the LDOE are directly related to these duties.[8]   Accordingly, the Court finds that the LDOE can release the requested information and documentation to the DOJ without violating FERPA.

### 2.    Other Considerations

The LDOE's remaining objections are that the requested discovery is irrelevant to its stated

---

[8]At first blush, it might appear that the DOJ's Request for Production No. 1 is not related to the DOJ's duty in this case because the DOJ seeks "copies of all signed waivers submitted by parents on behalf of disabilities who reside in Lincoln Parish who applied to the program." [Doc. No. 62, Exh. A].  However, in order to adequately compare all facets of the schools in Lincoln Parish, the Court and the DOJ need to know if the schools in the Program are providing services for disabled students.

purpose and that the discovery has been provided or is available through public sources.  The Court rejects these arguments.  First, with regard to relevancy, the DOJ has voluntarily withdrawn Interrogatories Nos. 6 and 7, to which the LDOE objected, at this time to facilitate resolution of this motion.  Second, the DOJ has not been able to acquire the requested discovery, even with the assistance of the Court, from public sources.  Thus, neither of the remaining considerations raised by the LDOE are sufficient to support denial of the DOJ's motion.

## III.   CONCLUSION

For the foregoing reasons, the DOJ's Motion for Relief Under the All Writs Act is GRANTED IN PART and DENIED IN PART as MOOT.  The Court finds that it has jurisdiction under the All Writs Act to order relief and further finds that the DOJ is entitled to release of the information and documents requested in Interrogatories Nos. 1-5 and 8 and Request for Production No. 1 under the law enforcement exception to FERPA.  To this extent, the DOJ's motion is GRANTED.  The LDOE shall provide the requested discovery not already provided to the DOJ by March 1, 2013.  The DOJ orally informed the Court that it withdraws Interrogatories Nos. 6 and 7.  Thus, the motion is DENIED AS MOOT as to Interrogatories Nos. 6 and 7, subject to the DOJ's right to re-propound the interrogatories at a later date.

MONROE, LOUISIANA, this 7th day of February, 2013.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

14