UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION NO. 66-12071 |
| Plaintiff, | JUDGE ROBERT G. JAMES |
| v. | |
| GRAMBLING HIGH FOUNDATION, INC., GRAMBLING STATE UNIVERSITY, et al., | |
| Defendants. | |

### MEMORANDUM ORDER

This is a long-standing desegregation case to which the United States of America ("the United States"), Louisiana State Superintendent of Education ("State Superintendent"), Louisiana Board of Elementary and Secondary Education ("BESE"), University of Louisiana System ("ULS"), Louisiana Board of Regents (the "Board of Regents"),[1] Grambling State University ("GSU"), and Louisiana Tech University ("La. Tech") remain parties.

In August 2016, the Court authorized the operation of the formerly *de jure* segregated Grambling Laboratory Schools ("Grambling Lab Schools") as a K-12 charter school named Lincoln Preparatory School ("Lincoln Prep") by the Grambling High Foundation, Inc. ("GHF"). GHF thereafter became, and remains, a party to this litigation. The Court's authorization of the operation of Lincoln Prep was subject to certain conditions, including the condition that Lincoln Prep accept the desegregation obligations of the Grambling Lab Schools and that the United States and GHF meet in good faith to try to prepare a new consent order.

---

[1]Collectively, the Court will refer to these as the State Defendants.

A hearing was held in this matter on July 20, 2017, after the United States and GHF failed to reach an agreement on certain provisions of the proposed order. During the hearing, GHF orally moved for modification of those conditions of operation imposed in August 2016. The United States opposed the motion and urged the Court to adopt the proposed order in its entirety.

Having reviewed the terms of the parties' joint proposals, as well as their objections and responses, and considering the evidence presented at the hearing and the record in this matter, the Court finds that the following Interim Order should be entered, superseding those parts of the July 13, 1984 Consent Decree, to the extent applicable. The Court further finds that this Interim Order is consistent with the objectives of the Fourteenth Amendment to the United States Constitution and federal law and is reasonably calculated to desegregate the Grambling Lab Schools in their converted form as Lincoln Prep. Therefore,

**IT IS ORDERED** that GHF's oral motion [Doc. No. 279] is **GRANTED IN PART and DENIED IN PART**.

I.   PROCEDURAL HISTORY

On June 8, 1966, the United States filed a complaint in this Court against Defendant Lincoln Parish School Board ("LPSB"), seeking to desegregate its *de jure* dual public school system. [Doc. No. 82-4]. On July 28, 1966, this Court entered a decree permanently enjoining LPSB from operating a racially segregated school system. *See* [Doc. No. 82-5]. On August 1, 1969, the Court entered an order directing LPSB to "take affirmative action to disestablish all school segregation and to eliminate the effects of the dual school system" and to adopt a desegregation plan. [Doc. No. 82-9]. That order was subsequently modified over the years and replaced by a Superseding Consent Order entered by this Court on May 24, 2012. *See* [Doc. Nos. 55, 82-10 & 82-11]. The 2012

Consent Order was extended and modified by a Supplemental Court Order on June 1, 2015. *See* [Doc. No. 151].

These orders did not address the Grambling Lab Schools or the A.E. Phillips Laboratory School ("AEP"), a public laboratory school located on the campus of La. Tech. As a result of further litigation, in 1980, this Court added the State Defendants, GSU (as operator of the Grambling Lab Schools), and La. Tech (as operator of AEP). [Doc. Nos. 82-16, 82-17 & 82-20]. "The state became involved in this action because the laboratory schools are run by the Louisiana State Board of Education and the respective university officials." [Doc. No. 82-21]. "The racial composition of these two [lab] schools became an issue in the [LPSB] case" because of its role as a conduit for funds and materials to the lab schools, providing transportation to their students, and approving faculty selections. *Id.* at p. 1.

On July 13, 1984, the Court entered a Consent Decree, agreed upon and signed by the United States, the State of Louisiana (the "State"), GSU, La. Tech, and LPSB. The 1984 Consent Decree required GSU, La. Tech, and LPSB to take a number of actions intended to desegregate the laboratory schools at the two universities. [Doc. No. 82-3, pp. 4-24].

For many years, no action was taken in this case. Upon its own motion on August 14, 2008, the Court amended the 1970 Decree, reactivating this case and requiring LPSB to file an annual statistical report. [Doc. No. 2]. On December 14, 2009, this Court ordered the United States to conduct a unitary status review. *See* [Doc. No. 8]. During the course of that review, the United States identified continuing issues related to the desegregation of the lab schools, which it summarized for the Court in its May 24, 2011 Status Report [Doc. No. 25].

On May 13, 2013, the United States filed a Motion for Further Relief [Doc. No. 82] seeking

3

a new desegregation plan for the laboratory schools. La. Tech and GSU opposed the United States' motion, and each university cross-filed for a declaration of unitary status [Doc. Nos. 97-98, 104-105]. LPSB filed a motion to dismiss itself from the litigation regarding the lab school issues [Doc. No. 102]. Following briefing on the parties' various motions, the Court directed the parties to engage in negotiations to attempt to resolve the lab school issues. *See* [Doc. No. 118, pp. 1-2].

The United States proposed options to desegregate the lab schools to GSU and the other Defendants on November 12, 2013. *See* [Doc. No. 122]. On January 6, 2014, the United States met with counsel for GSU and the other Defendants to further discuss the proposals to resolve the outstanding desegregation issues involving the lab schools. *See id.* at p. 2. The United States, GSU, and the other parties met with the Court on March 10, 2014, for further negotiations. *See* [Doc. No. 124, pp. 2-3]. During the conference, GSU informed the Court and the parties that, in partnership with GSU and the City of Grambling, GHF had sought permission from LPSB to convert GSU's lab schools to a Type 3 charter school and would seek permission from BESE for a Type 2 charter after receiving LPSB's rejection. *See id.* at p. 2.

On August 12, 2015, GHF received conditional approval from BESE for a Type 2 charter school, pending LDOE review. After the State Superintendent confirmed that GHF met all standards for approval, GSU filed an Amended Motion and Brief [Doc. Nos. 170, 170-1] on January 27, 2016. The Amended Motion and Brief sought permission to convert the Grambling Lab Schools to a charter school and to transfer control and governance of the charter school to GHF. The United States opposed GSU's Amended Motion to the extent that it sought to operate the charter school without any obligations to desegregate and to eliminate the vestiges of the *de jure* segregation. *See* [Doc. No. 200].

On April 20, 2016, the Court conducted a hearing regarding GSU's Motion and Amended Motion [Doc. Nos. 157, 170]. *See* [Doc. No. 205]. On April 25, 2016, the Court issued a Ruling and Order granting GSU's motion in part and denying it in part. *See* [Doc. No. 211]; [Doc. No. 212]. The Court granted GSU's request to close the lab schools at the end of the 2015-2016 school year, but denied GSU's request to transfer control of the former Grambling Lab Schools to GHF without desegregation obligations. The Court granted the request "only if GHF accepts the transfer subject to GSU's desegregation obligations and under the other conditions detailed in this Ruling." [Doc. No. 211, pp. 8-9]. Those conditions included the following requirements: (i) GHF "will enroll in this matter immediately"; (ii) GSU, "while no longer operating the Laboratory Schools, will remain a party to this action to facilitate the transfer and to assist the Court with any issues that may arise with the charter school"; and (iii) GSU and GHF "will work with the United States to develop a new consent decree to replace the 1984 Consent Decree and to develop a plan which is reasonably calculated to address the goals of desegregation and to allow the new charter school to obtain unitary status." [Doc. No. 211, p. 8].

On July 19, 2016, the Court granted GHF's motion to intervene. [Doc. No. 221].

On August 2, 2016, the parties participated in a settlement conference. After the parties reached an impasse, GHF made an oral motion for authorization to open Lincoln Prep for the 2016-2017 school year. *See* [Doc. No. 230, p. 7]. The United States opposed the oral motion. *See id.* at pp. 7-8. After conducting an emergency hearing on August 2, the Court authorized GHF to begin operating Lincoln Prep in the 2016-2017 school year, subject to several conditions: (i) Lincoln Prep "will have a baseline of 370 students"; (ii) GHF "will file a letter of financial commitment for the construction of new facilities no later than October 1, 2017"; and (iii) GHF and the United States

"will file a proposed consent decree no later than September 6, 2016 . . . . [or] separate proposed desegregation plans for the charter school with argument in support thereof." *Id.* at p. 12.

## II. LEGAL STANDARDS

A school system that was previously segregated by law and has not yet achieved unitary status has the affirmative duty to eliminate all vestiges of past discrimination to the extent practicable. *See Freeman v. Pitts*, 503 U.S. 467, 485 (1992); *Board of Educ. of Oklahoma City Pub. Sch. Dist. No. 89 v. Dowell*, 498 U.S. 237, 249-50 (1991); *Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 458-59 (1979); *Green v. County Sch. Bd. of New Kent County, Va.*, 391 U.S. 430, 437-38 (1968)). The affirmative duty to desegregate is a continuing responsibility, and "[p]art of the affirmative duty . . . is the obligation not to take any action that would impede the progress of disestablishing the dual system and its effects." *Dayton Bd. of Education v. Brinkman*, 443 U.S. 526, 537-38 (1979).

The ultimate inquiry in determining whether a school system is unitary is whether it has (1) fully and satisfactorily complied in good faith with the court's desegregation orders for a reasonable period of time; (2) eliminated the vestiges of prior *de jure* segregation to the extent practicable; and (3) demonstrated a good faith commitment to the whole of the court's order and to those provisions of the law and the Constitution which were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 88-89 (1995); *Freeman*, 503 U.S. at 491-92; *Dowell*, 498 U.S. at 248-50 (1991). The Supreme Court has identified six areas, commonly referred to as the "*Green* factors," which must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual school system to the extent practicable. These factors are (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular

activities; and (6) facilities. *Green*, 391 U.S. at 435-42. The *Green* factors are not intended to be a "rigid framework," as the Supreme Court has approved consideration of other indicia, such as "quality of education," in determining whether a school system has fulfilled its desegregation obligations. *See Freeman*, 503 U.S. at 492-93. Where racial disparities exist with respect to any of these factors, the burden is on defendants to show that those disparities are not causally related to the former dual system. *Id.* at 494.

With respect to student assignment, a school is considered a "one-race" school where its student body is at least 90 percent black or white. *See Flax v. Potts*, 915 F.2d 155, 161 n.8 (5th Cir. 1990). Federal courts have also considered schools to be racially identifiable where the percentage of students of one race deviates by more than 15-20 points from the system-wide average. *See*, e.g., *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 319 (4th Cir. 2001) ("[P]lus/minus fifteen percent variance is clearly within accepted standards, and provides a reasonable starting point in the unitary status determination."); *Williams v. Kimbrough*, No. 65-11329, 2010 WL 1790516, at *5 n.4 (W.D. La. 2010) (unpublished) (using a 20-percent variance).

As discussed below, the 1984 Consent Order has not resulted in the desegregation of the Grambling Lab Schools. Therefore, additional relief is required.

### III. FACTS

#### A. Operations and Funding

Historically and through the end of the 2015-2016 school year, GSU's College of Educational, Professional, and Graduate Studies exercised direct day-to-day supervision of the Grambling Lab Schools. The schools were funded through a combination of sources, including operational funding through the State's Minimum Foundation Program ("MFP"), a small fraction

of locally generated funds, and generated revenues from tuition and private donations. However, the lab schools were unable to pay for all of their operating expenses, resulting in annual deficits in recent years, covered in full or in part by GSU.

GHF began to govern Lincoln Prep starting in 2016-2017. GHF was incorporated in Louisiana as a tax-exempt public charity in 2007. As currently constituted, GHF's Board of Directors consists of nine board members, seven of whom are black. At least five of the current board members graduated from GSU.

GHF originally partnered with an experienced charter school operator, Responsive Education Solutions, Inc. ("ResponsiveEd"), to assist with the charter school's operations in exchange for 15 percent of Lincoln Prep's State MFP revenues. On July 26, 2016, ResponsiveEd recommended that GHF delay opening Lincoln Prep until the 2017-2018 school year.

After GHF notified ResponsiveEd that it would open the school in the 2016-2017 school year, ResponsiveEd terminated its Charter Management Organization agreement with GHF. Therefore, GHF opened Lincoln Prep in the 2016-2017 school year without a charter management organization agreement in place. GHF assumed responsibility for the management of Lincoln Prep, while contracting with vendors and service providers, such as 4th Sector Solutions, Inc. and School Food Solutions L3C.

Lincoln Prep receives its MFP funding directly from the State. According to State law, per-pupil funding for the charter school is equal to the per-pupil funding associated with each student's parish of residence and, unlike the Grambling Lab Schools' funding arrangement, includes a local revenue representation based on charter school's students as part of the MFP formula.

### B. Student Enrollment

The Grambling Lab Schools were *de jure* segregated public schools in the formerly dual system of public schools in Lincoln Parish. *See* [Doc. No. 212, p. 4 ("The [Grambling] Laboratory Schools have educated students and served the Grambling community for over one hundred years, having been established under the prior dual system."). Historically, the Grambling Lab Schools have been racially identifiable as black schools. By the 2015-2016 school year, only three white students were enrolled at the Grambling Lab Schools (none at Alma J. Brown, one in 6th grade at GMS, and two at GHS in 9th and 12th grade, respectively) out of a total school-wide enrollment of 349 students. There was no formal recruiting plan for white students, and GSU and the Grambling Lab Schools had not engaged in any recruitment activities.

Lincoln Prep opened in the GSU facilities for the 2016-2017 school year with increased white student enrollment of twelve students. However, the overall student population at Lincoln Prep remains disproportionately black relative to the K-12 student enrollment in LPSB's schools. Lincoln Prep's white student enrollment of 3.2% is about 41.8 percentage points lower than the K-12 white student enrollment at LPSB's schools.

### C. Faculty and Staff

The Grambling Lab Schools' faculty was predominantly and disproportionately black in comparison to LPSB's faculty. During the 2015-2016 school year, 82.4 % of the lab schools' teachers were black, compared with only 12.6 % in LPSB's schools, and both of the principals at the lab schools (GMS and GHS shared one principal) were black. The Grambling Lab Schools' faculty has been almost entirely black since at least the early 1970s.

During the 2016-2017 school year, Lincoln Prep's faculty remained disproportionately black

when compared to LPSB's faculty.

### D. Quality of Education

Academically, in the year prior to conversion, the Grambling Lab Schools received a 2014-2015 school performance grade of D,[2] while LPSB's schools received an overall performance grade of B for 2014-2015. Alma J. Brown received a 2014-2015 school performance score of 47.5, GMS received a 45.4, and GHS received a 68.4, all of which were well below the Lincoln Parish District Performance score of 95.5.

GHF presented no evidence at the hearing to show that Lincoln Prep had improved performance during the 2016-2017 school year.

### E. Facilities

The Grambling Lab Schools occupied three facilities on GSU's campus. Alma J. Brown ("K-5 Campus"), the newest facility, was built in 1982 and is located on a different part of GSU's campus, separate from Grambling Middle School ("6-8 Building") and Grambling High School ("9-12 Building") (collectively, "6-12 Campus"). The 6-12 Campus is located in the facility that originally housed all Grambling Lab School students in grades K-12, and which consists of buildings constructed in 1955 and 1965 that share common facilities, including a cafeteria and gymnasium. As of the 2015-2016 school year, all of the facilities needed significant repairs or improvements.

For the 2016-2017 school year, Lincoln Prep continued to operate in the Grambling Lab facilities.

---

[2]Although the last year of operation for the Grambling Lab Schools was 2015-2016, the scores for 2014-2015 were provided during that year.

F.     **Extracurricular Activities and Transportation**

The Grambling Lab Schools used six buses to transport students during the 2015-2016 school year. LPSB owned and operated three of the buses, which transported Grambling Lab School students who lived within Lincoln Parish and requested transportation to attend the schools. GSU leased three additional buses, which were operated by GSU employees and provided transportation to Grambling Lab School students who lived in other parishes.

GMS and GHS students generally participated in after-school extracurricular activities together, which, during the 2015-2016 school year, included basketball, football, baseball, softball, track, band, cheerleading, dance line, and a 4-H club. Alma J. Brown did not offer any after-school extracurricular activities.

For 2016-2017, GHF continued to provide transportation and extracurricular activities similar to those offered by Grambling Lab Schools.

IV.    **REMEDIAL MEASURES FOR THE CONVERSION OF THE GRAMBLING LAB SCHOOLS TO LINCOLN PREP AND THE DESEGREGATION OF THE CONVERTED SCHOOL**

Given the significant issues facing GHF in the desegregation of the converted Lincoln Prep, the Court has determined that an Interim Order addressing three main areas of immediate concern has the greatest likelihood of success. While the Court will provide some basic guidance in the other areas, the Court's focus in this Interim Order will be on the *Green* factors of student assignment and faculty and staff assignment, as well as the composition of GHF's Board of Directors.

A.     **Student Assignment**

GHF shall, by the 2020-2021 school year, increase the percentage of white students enrolled at Lincoln Prep, so that it is within plus or minus 20 percentage points of the percentage of white

11

students enrolled in grades K-12 in LPSB's schools. GHF will thereafter exercise good faith efforts to maintain the percentage of white students enrolled in the school within that range. To accomplish these enrollment targets, GHF shall take the following actions:

### 1. White Student Admissions Targets for School Years 2017-2018 and 2018-2019

Beginning with the 2017-2018 school year, GHF will have a percentage enrollment of 8% white students. For the following school year, 2018-2019, GHF will have a percentage enrollment of 14% white students. GHF will take affirmative measures-via an actively managed enrollment process-to reach the annual white student enrollment targets for each entering kindergarten class and for higher grade levels.

### 2. Lottery Exemption

Because Lincoln Prep is a state charter school, students are admitted, at least in part, through a lottery process. Until Lincoln Prep achieves a school-wide white student enrollment that is within plus or minus 20 percent of LPSB's white student enrollment or until the Court orders otherwise, the following conditions will apply:

a. White students who reside in the State of Louisiana and apply to the charter school are eligible for admission and, therefore, will be admitted to Lincoln Prep on a first-priority basis (i.e., all white applicants eligible for admission will be admitted first before (i) existing/returning black students, and (ii) the siblings of current black students); and

b. To the extent that a lottery is conducted for the randomized admission of students to Lincoln Prep, all existing/returning white students, white siblings of existing/returning white students, and new white student applicants will be exempt from such lottery.

### 3. Overall Student Enrollment and Growth Plan

The Court modifies student enrollment from its August 2016 conditions. GHF is limited to enrolling 360 black students at Lincoln Prep, beginning with the 2017-2018 school year. GHF may enroll any number of white students or students of other races, subject only to the limits imposed by the State.

### 4. Enrollment Application Form

To ensure that administrators can implement the requirements of this Order, the application form for admission to Lincoln Prep will include a field requesting the race of each student who applies. If a student's self-identified race differs from the race listed on his or her original birth certificate, this fact must be noted on the application form.

### 5. Elimination of Tuition

Consistent with the requirements of State law and the obligation to desegregate the converted charter school under federal law, students attending Lincoln Prep will not be charged-and GHF will not accept-tuition as a condition for enrollment at the school.

## B. Faculty and Staff

GHF will conduct hiring for all employment positions on a racially non-discriminatory basis and will take affirmative measures to recruit white candidates for administrator, teacher, certified staff, and other staff positions at the school. GHF will conduct its hiring to increase the percentage of white faculty and staff members to a level that is within plus or minus 20% of the total white population of Lincoln Parish, as measured by the 2014 demographic estimates from the U.S. Census Bureau's American Community Survey.

1. **Hiring**

For faculty and staff hiring, GHF will take the following actions for the 2017-2018 school year and for each year thereafter during the term of this Order:

    a. Include a field on the school's application for employment requesting an applicant for employment to self-identify the applicant's race;

    b. For each position, track the race of all applicants for that position;

    c. Track the race of all newly hired faculty and staff members;

    d. Retain applications for employment for a period not less than three years, and for vacancies that arise during that period, consider all previous applicants for employment who qualify for the vacant position unless an applicant has affirmatively withdrawn from consideration for future vacancies; and

    e. Maintain records, with each such record to be maintained for a period of not less than three years, relating to the hiring, promotion, demotion, or separation from employment of persons to all employment positions at Lincoln Prep, including teaching, administration, certified staff, non-certified staff, and other paid positions (e.g., coaching and advising) (including, but not limited to, application forms and related documents, interview protocols, interview notes, recommendations). For all individuals who separate from employment, the school will maintain a record of whether the individual resigned, retired, or was terminated.

2. **Recruitment**

GHF will take measures to recruit faculty and staff for vacancies during the 2017-2018 school year and for each year thereafter during the term of this Order with the goal of increasing the pool of qualified white applicants for faculty and staff vacancies by posting faculty vacancies on-line

(e.g., Teachers-teachers.com, Indeed.com, SocietyForClassicalLearning.org, TeachLouisiana.net, and LinkedIn.com); attending in-person career fairs at universities in Louisiana, Mississippi, and Arkansas that are within a 200-mile radius of Lincoln Prep; and utilizing other opportunities, such as the American Teacher Initiative's teacher placement program, the Troops to Teachers program, and Teach for America, Inc.

### 3. Composition of GHF's Board of Directors

During the term of this Order, GHF will make reasonable and good faith efforts to recruit members of the white community to serve on GHF's Board of Directors and maintain a desegregated Board, so that the number of white members of the Board is within plus or minus 20% of LPSB's white student enrollment.

### C. Facilities

To recruit white students, GHF must provide an academic and extracurricular setting in facilities that are comparable to those at schools in the surrounding area. GHF should take good faith steps toward this goal.

### D. Quality of Education

To ensure that it provides a quality education at the converted Lincoln Prep, GHF will take good faith steps, including maintaining an appropriate, re-designed curriculum and employing certified teachers whenever possible. GHF will also provide a comprehensive, mandatory professional development program for Lincoln Prep's faculty and staff.

### E. Transportation

GHF will not discriminate on the basis of race, color, ethnicity, religion, sex, national origin, or disability in the provision of any of Lincoln Prep's transportation services. If GHF contracts with

a third-party for the provision of transportation services, GHF will not permit the third-party to discriminate on the basis of race, color, ethnicity, religion, sex, disability, or national origin in the provision of any of the services that the third-party provides. GHF's transportation will be designed, so that it complies with State law, has a likelihood of success of attracting white students, and does not undermine federal desegregation orders and goals or promote resegregation in Lincoln or other schools and/or school districts.

    **F.**    **Extracurricular Activities**

GHF will take measures to ensure that all students at Lincoln Prep are aware of the school's athletic teams, clubs, and other extracurricular activities and that all students at the school have the opportunity to participate in such activities at appropriate grade levels and in compliance with federal law. GHF will not permit any race-based selection of students for participation or recognition in any extracurricular activity or school-sponsored event.

**V.**    **MONITORING AND REPORTING**

On or before October 15 of each year during the term of this Order, GHF will file with the Court and produce to the United States a report (the "October 15 Report") containing the following information:

    a.    The number and percentage of all students by race separately for each grade level and by total school-wide enrollment. There must be a column on the report which notes if a student's self-identified race differs from the race listed on his or her original birth certificate.

    b.    For the current school year, the net difference in the number and percentage of white students school-wide and by grade level in comparison to the previous school year.

    c.    A spreadsheet in a native electronic format (such as Microsoft Excel or a

compatible program) containing a list of all students who applied to attend Lincoln Prep during the preceding application period and all returning students, indicating for each student: (i) first and last name; (ii) race; (iii) parish of residence; (iv) grade level for which the student applied; (v) whether the applicant attended Lincoln Prep during the preceding school year; (vi) whether the student received a lottery exemption and, if so, which exemption; (vii) whether the student was offered enrollment at Lincoln Prep; and (viii) whether the student ultimately enrolled for the school year during which the report is filed. This portion of the October 15 Report will be filed under seal.

        d.     A list of all Lincoln Prep administrators, teachers, and certified staff, indicating each employee's job title, position, certification(s), and race, whether the individual is an employee of GHF, GSU, LPSB, or another entity (or any combination thereof), and whether the employee was newly hired or assigned to Lincoln Prep for the current school year. The report will also state the percentage of faculty and certified staff school-wide by race.

        e.     A list of the names and races of GHF's Board of Directors, their parishes of residence, whether each is an alumnus of GSU, the date on which they each joined the Board, a description of their roles/positions on the Board, and a summary of annual efforts undertaken to recruit members of the white community to join the Board of Directors.

        f.     A course catalogue containing a list of all high school classes taught at Lincoln Prep that briefly summarizes each class's instructional content/design and identifies the name of the corresponding teacher(s) assigned to teach each class.

        g.     A list of athletic, club, and other extracurricular activities offered by Lincoln Prep (with corresponding grade levels), the facilities used in connection with each activity, and whether the facility used is owned or operated by GSU.

        h.     A list of Lincoln Prep's bus routes, including the names and races of all students assigned to each route, and a copy of the annual Transportation Needs Assessment. The portion of the October 15 Report containing the bus routes with students' names will be filed under seal.

        i.     A sworn affidavit by the president of GHF's Board of Directors, containing a detailed narrative description-informed by personal knowledge-of GHF's and GSU's annual efforts to implement the terms of this Order to desegregate Lincoln Prep with respect to student enrollment, facilities, faculty, staff, quality of education, extracurricular activities, and transportation.

        j.     A current, executed, and signed copy of all Memoranda of Agreement, Memoranda of Understanding, leases, charter management organization agreements, services agreements, or any other formal agreement executed between GHF and its strategic partners, including, but not limited to GSU, BESE, LDOE, ResponsiveEd, and 4th Sector Solutions for the 2016-2017 school year. To the extent the aforementioned documents are amended, provide all updated or revised versions of such documents for each school year after 2016-2017.

    **C.**    **Supplemental Reports**

To supplement its formal reports, GHF and/or GSU will periodically provide informal updates to the United States as appropriate (either by request of the United States and/or upon the initiative of GHF and/or GSU) regarding the implementation of this Order, including but not limited to efforts to recruit white students and faculty and to realize the construction of Lincoln Prep's new facilities and/or the comprehensive renovation of existing facilities.

    **D.**    **Site Visits**

    The United States may review Lincoln Prep's current and future facilities; conduct on-site

interviews of administrators, faculty, and staff and other individuals or strategic partners responsible for school operations; and observe professional development, classroom instruction, and student recruitment activities to evaluate compliance with the terms of this Order upon reasonable notice to GHF.

### E. Injunction and Prior Orders

This Order supersedes those parts of the 1984 Consent Decree concerning actions required by GSU, LPSB, and the State Defendants regarding the desegregation of the Grambling Lab Schools and/or their successor, Lincoln Prep, to the extent applicable. For the duration of this Order, GSU, and the State Defendants are hereby enjoined and restrained from operating an elementary, middle, or high school on the campus of GSU, reestablishing a vestige of the dual school system in Lincoln Parish, or impeding the orderly desegregation of Lincoln Prep.

## VI. FURTHER ORDERS

It is the intent of this Court for this Interim Order to provide basic requirements and/or instructions to the parties for the 2017-2018 and 2018-2019 school years. The United States, GSU, GHF, and the State Defendants shall negotiate in good faith all disputes that may arise, and each party has the right to seek judicial resolution of all issues related to compliance with this Order. The Court may amend this Order upon joint motion of the United States, GSU, GHF, and the State Defendants, upon motion of any of them, or *sua sponte*.

**SO ORDERED, ADJUDGED, AND DECREED,**

**MONROE, LOUISIANA, this 1st day of August, 2017.**

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE