UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION NO. 66-12071** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **LINCOLN PARISH SCHOOL BOARD, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## MEMORANDUM RULING AND ORDER

On May 14-15, 2019, the Court held a hearing on its own motion to address the efforts of Grambling High Foundation ("GHF") to comply with orders designed to achieve desegregation.

For the following reasons, the Court finds that GHF is not in compliance with the orders of this Court, but will allow GHF to continue operation of Lincoln Preparatory School ("Lincoln Prep") for the 2019-2020 school year, given its good faith efforts.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is a long-standing desegregation case to which the United States of America ("the United States"), Louisiana State Superintendent of Education ("State Superintendent"), Louisiana Board of Elementary and Secondary Education ("BESE"), University of Louisiana System ("ULS"), Louisiana Board of Regents (the "Board of Regents"),[1] Grambling State University ("GSU"), and Louisiana Tech University ("La. Tech") remain parties.

On June 8, 1966, the United States filed a complaint in this Court against Defendant Lincoln Parish School Board ("LPSB"), seeking to desegregate its *de jure* dual public school system. On July 28, 1966, this Court entered a decree permanently enjoining LPSB from

---

[1] Collectively, the Court refers to these Defendants as "the State Defendants."

operating a racially segregated school system. On August 1, 1969, the Court entered an order directing LPSB to "take affirmative action to disestablish all school segregation and to eliminate the effects of the dual school system" and to adopt a desegregation plan.

Neither the Grambling Lab Schools, a public laboratory school located on the campus of GSU, or the A.E. Phillips Laboratory School ("AEP"), a public laboratory school located on the campus of La. Tech, were parties to the original action.

As a result of further litigation, in 1980, this Court added the State Defendants, GSU (as operator of the Grambling Lab Schools), and La. Tech (as operator of AEP). [Doc. Nos. 82-16, 82-17 & 82-20]. "The state became involved in this action because the laboratory schools are run by the Louisiana State Board of Education and the respective university officials." [Doc. No. 82-21]. "The racial composition of these two [lab] schools became an issue in the [LPSB] case" because of its role as a conduit for funds and materials to the lab schools, providing transportation to their students, and approving faculty selections. *Id.* at p. 1.

On July 13, 1984, the Court entered a Consent Decree, agreed upon and signed by the United States, the State of Louisiana (the "State"), GSU, La. Tech, and LPSB. The 1984 Consent Decree required GSU, La. Tech, and LPSB to take a number of actions intended to desegregate the laboratory schools at the two universities. [Doc. No. 82-3, pp. 4-24].

For many years, no action was taken in this case with regard to any parties.

Upon its own motion on August 14, 2008, the Court amended the 1970 Decree, reactivating this case and requiring LPSB to file an annual statistical report. [Doc. No. 2]. On December 14, 2009, this Court ordered the United States to conduct a unitary status review. *See* [Doc. No. 8]. During the course of that review, the United States identified continuing issues related to the

2

desegregation of the lab schools, which it summarized for the Court in its May 24, 2011 Status Report [Doc. No. 25].

On May 13, 2013, the United States filed a Motion for Further Relief [Doc. No. 82] seeking a new desegregation plan for the laboratory schools. La. Tech and GSU opposed the United States' motion, and each university cross-filed for a declaration of unitary status [Doc. Nos. 97-98, 104-105]. LPSB filed a motion to dismiss itself from the litigation regarding the lab school issues [Doc. No. 102]. Following briefing on the parties' various motions, the Court directed the parties to engage in negotiations to attempt to resolve the lab school issues. *See* [Doc. No. 118, pp. 1-2].

The United States proposed options to desegregate the lab schools to GSU and the other Defendants on November 12, 2013. *See* [Doc. No. 122]. On January 6, 2014, the United States met with counsel for GSU and the other Defendants to further discuss the proposals to resolve the outstanding desegregation issues involving the lab schools. *See id.* at p. 2. The United States, GSU, and the other parties met with the Court on March 10, 2014, for further negotiations. *See* [Doc. No. 124, pp. 2-3]. During the conference, GSU informed the Court and the parties that, in partnership with GSU and the City of Grambling, GHF had sought permission from LPSB to convert GSU's lab schools to a Type 3 charter school and would seek permission from BESE for a Type 2 charter after receiving LPSB's anticipated rejection. *See id.* at p. 2.

GHF did not receive permission from LPSB to convert to a Type 3 charter school and proceeded with obtaining a Type 2 charter. On August 12, 2015, GHF received conditional approval from BESE for a Type 2 charter school, pending LDOE review. After the State Superintendent confirmed that GHF met all standards for approval, GSU filed an Amended Motion and Brief [Doc. Nos. 170, 170-1] on January 27, 2016, seeking the Court's authorization to convert

3

the Grambling Lab Schools to a charter school and to transfer control and governance of the charter school to GHF. The United States opposed GSU's Amended Motion to the extent that it sought to operate the charter school without any obligations to desegregate and to eliminate the vestiges of the *de jure* segregation. *See* [Doc. No. 200].

On April 20, 2016, the Court conducted a hearing regarding GSU's Motion and Amended Motion [Doc. Nos. 157, 170]. *See* [Doc. No. 205]. On April 25, 2016, the Court issued a Ruling and Order granting GSU's motion in part and denying it in part. *See* [Doc. No. 211]; [Doc. No. 212]. The Court granted GSU's request to close the lab schools at the end of the 2015-2016 school year, but denied GSU's request to transfer control of the former Grambling Lab Schools to GHF without desegregation obligations. The Court granted the request "only if GHF accepts the transfer subject to GSU's desegregation obligations and under the other conditions detailed in this Ruling." [Doc. No. 211, pp. 8-9]. Those conditions included the following requirements: (i) GHF "will enroll in this matter immediately"; (ii) GSU, "while no longer operating the Laboratory Schools, will remain a party to this action to facilitate the transfer and to assist the Court with any issues that may arise with the charter school"; and (iii) GSU and GHF "will work with the United States to develop a new consent decree to replace the 1984 Consent Decree and to develop a plan which is reasonably calculated to address the goals of desegregation and to allow the new charter school to obtain unitary status." [Doc. No. 211, p. 8].

On July 19, 2016, the Court granted GHF's motion to intervene. [Doc. No. 221].

On August 2, 2016, the parties participated in a settlement conference. After the parties reached an impasse, GHF made an oral motion for authorization to open Lincoln Prep for the 2016-2017 school year. *See* [Doc. No. 230, p. 7]. The United States opposed the oral motion. *See id.* at pp. 7-8. After conducting an emergency hearing on August 2, the Court authorized GHF to begin operating Lincoln Prep as a K-12 charter school in the 2016-2017 school year, subject to several conditions: (i) Lincoln Prep "will have a baseline of 370 students"; (ii) GHF "will file a letter of financial commitment for the construction of new facilities no later than October 1, 2017"; and (iii) GHF and the United States "will file a proposed consent decree no later than September 6, 2016 . . . . [or] separate proposed desegregation plans for the charter school with argument in support thereof." *Id.* at p. 12.

On August 15, 2016, the Court granted in part and denied in part GSU's Motion to Dismiss [Doc. No. 105]. To the extent that GSU moved the Court to find the Grambling Laboratory Schools unitary, the motion was denied as moot. [Doc. No. 234]. To the extent that GSU moved for its dismissal from this case based on its obligations to the Grambling Laboratory Schools, the motion was granted in part. However, the motion was denied to the extent that GSU sought its complete dismissal from this case. The Court ruled that GSU remain a party to facilitate the transfer of the Grambling Laboratory Schools to GHF, to assist with any issues that may arise with the charter school, and to work toward developing a plan for the charter schools which is reasonably calculated to address the goals of desegregation and to allow the school to obtain unitary status.

On January 18, 2017, the Court found LPSB had achieved unitary status and dismissed the case against it. However, GSU, GHF, La. Tech, and the State Defendants remained parties in this action. *See* [Doc. Nos. 265 & 266].

5

There continued to be issues with the desegregation of Lincoln Prep. During the 2016-2017 school year, Lincoln Prep had a white student enrollment of about 3.2%. A hearing was held in this matter on July 20, 2017, after the United States and GHF failed to reach an agreement on certain provisions of a proposed order for the upcoming school year. During the hearing, GHF orally moved for modification of those conditions of operation imposed in August 2016. The United States opposed the motion and urged the Court to adopt the proposed order in its entirety.

On August 1, 2017, the Court issued a Memorandum Order [Doc. No. 287] granting in part and denying in part GHF's oral motion and issuing an Interim Order ("the Interim Order"). In part, the Interim Order provided that GHF "shall, by the 2020-2021 school year, increase the percentage of white students enrolled at Lincoln Prep, so that it is within plus or minus 20 percentage points of the percentage of white students enrolled in grades K-12 in LPSB's schools. GFH will thereafter exercise good faith efforts to maintain the percentage of white students enrolled in the school within that range." [Doc. No. 287, pp. 11-12]. To reach the ultimate 2020-2021 school year target, beginning with the 2017-2018 school year, the Court limited black student enrollment to 360 students, but allowed GHF to enroll as many white students and students of other races as permitted by their state charter. *Id.* at p. 13. Additionally, the Court set white student enrollment targets for the 2017-2018 and 2018-2019 school years:[2]

> Beginning with the 2017-2018 school year, GHF will have a percentage enrollment of 8% white students. For the following school year, 2018-2019, GHF will have a percentage enrollment of 14% white students. GHF will take affirmative measures-via an actively managed enrollment process-to reach the annual white student enrollment targets for each entering kindergarten class and for higher grade levels.

---

[2] The Court did not set targets for the 2019-2020 school year, with the idea that the parties would continue to work together in good faith and would seek guidance and/or rulings from the Court if necessary. *See* [Doc. No. 287, p. 19].

*Id.* at p. 12. The Court set additional requirements for staffing, composition of the Board of Directors, facilities, quality of education, transportation, and extracurricular activities. Finally, the Court continued the requirement that, on or before October 15 of each year, GHF must file a status report containing the identified information.

In October 2017, GHF filed its status report and exhibits. [Doc. Nos. 302 & 303]. At that time, no status conference was requested.

In October 2018, GHF filed its status report and exhibits. [Doc. Nos. 313 & 314]. On October 30, 2018, the Court issued a minute entry [Doc. No. 316] setting a status conference for December 3, 2018.

On December 3, 2018, the Court held a status conference with counsel for the United States, GHF, and GSU and the Court's law clerk. The Court set deadlines for information requested by the United States and further reminded counsel that GHF should be continuing to look for a new location for Lincoln Prep.

On February 7, 2019, in light of the appropriations lapse for Government agencies, including the DOJ, the Court granted an extension to February 28, 2019, for the United States to file a memorandum addressing GHF's status report and all additional information received. The Court then extended this deadline to March 11, 2019, on the United States' motion. [Doc. No. 322].

On March 11, 2019, the United States filed a memorandum on GHF's compliance with the Interim Order. [Doc. Nos. 323, 324 & 325].

After reviewing the Lincoln Prep report and the United States' response, the Court had serious concerns about Lincoln Prep's ongoing failure to reach complete compliance with the

Court's prior desegregation orders. Therefore, the Court set a telephone status conference.

On March 18, 2019, the Court held a status conference with counsel, setting a hearing for April 29, 2019, to address these concerns. The Court also set discovery and briefing deadlines.

After a tornado caused significant damage to the office and home of GHF's counsel, the Court re-set the hearing for May 14, 2019. Trial briefs were timely filed before the hearing. [Doc. Nos. 348, 349 & 352].

An evidentiary hearing was held on May 14-15, 2019. The Court heard testimony, via live and video presentations, from GHF's expert, Dr. Joanne Hood; Lincoln Prep's director, Lt. Col. Gordon Ford; Lincoln Prep Senior Assistant Director, Melanie Colvin, and Assistant Director Phadra Burks Blake; Dr. Birdex Copeland; and the United States' experts, Dr. Claire Smrekar and James Brewer.[3]

## II. REVIEW AND ANALYSIS OF EVIDENCE ADDUCED PRIOR TO AND AT THE HEARING

Much of the evidence and testimony presented was known to the Court and has not changed since these issues were initially addressed. All parties were aware, and the Court certainly credits Dr. Smrekar's testimony then and at the recent hearing, that GHF faced an uphill battle to recruit white students. However, it was the Court's intent to give GHF a fair opportunity to achieve desegregation and to continue operation.

To do so, the Court imposed certain conditions. The Court has considered the evidence relevant to each of these conditions.

---

[3] The Court also heard testimony from Mindy Lewis, a former white student at the Grambling Lab Schools, but the Court finds that her testimony, while of historical relevance, was not relevant to the particular issue before the Court—GHF's compliance with the Interim Order.

### A.  Recruitment, Enrollment, and Retention of White Students

First, the Court set increasing white student enrollment targets over a period of years to permit GHF time to desegregate Lincoln Prep by the 2020-21 school year.  The Court established white student enrollment targets of 8% and 14% at Lincoln Prep for the 2017-18 and 2018-19 school years, respectively.  It is undisputed that GHF has failed to meet the Interim Order's white student enrollment targets for both years.  As of the 2018-19 school year, GHF had only 34 white students (7.8%) enrolled out of 437 total students, an increase of only half a percentage point over the past year.

To comply with the Interim Order, GHF must increase Lincoln Prep's white student enrollment by at least 17.3 percentage points before the 2020-2021 school year.  Based on the lack of progress between 2016 and 2019, it appears that GHF's likelihood of success is slim.

In March 2017, Lt. Col. Ford prepared a marketing and recruitment plan that adopted most of the recommendations of the United States' desegregation expert, Dr. Claire Smrekar, in her 2016 Expert Report.  *See* [Doc. 323-5].  However, GHF has not relied on the 2017 marketing plan or developed another particular written plan.  At the hearing, Lt. Col. Ford testified about GHF's strategic decision to delay recruitment until Lincoln Prep improved its score from an "F" school.  Lt. Col. Ford explained that they knew they would have little success in attracting white students to a school with a poor performance score.  The Court further heard testimony from Col. Ford and employees Melanie Colvin and Phadra Burks Blake about GHF's efforts to recruit and retain white students by targeting churches, festivals, and other events to recruit white students, through efforts such as the Summer 2018 Roadshows. GHF also pointed

out its strategy of trying to attract white students who were being overlooked in the traditional public school setting, but who could perform at higher levels if given the right tools and plans.

Unfortunately, as Dr. Smrekar pointed out in her recent report and testimony, GHF's lack of adherence to the March 2017 marketing plan is not the only problem with its efforts. Even if GHF strategically delayed recruitment for the first two years, since that time, other than the Summer 2018 Roadshows, its recruitment efforts have largely been directed at promoting Lincoln Prep to the general public, not a dedicated plan to recruit white students. When it has engaged in marketing efforts, GHF has not taken actions to monitor and analyze these recruitment efforts to see what has and has not worked and to improve the efficacy of its efforts. *See* [Doc. 323-1].

Finally, white student departure remains of great concern to the Court. It is not enough that GHF recruit white students to attend Lincoln Prep. In order to achieve desegregation, GHF must retain the white students it recruits while recruiting additional students. The Court set a target goal for white student enrollment, and a revolving door of the same small number of white students will not suffice to achieve that goal. Until November 2018, GHF did not even collect data on the reasons for departure of white students. Since that time, GHF does not appear to have tried to address such reasons for departure in order to prevent future departures. While the Court does believe that the administration, faculty, and staff of Lincoln Prep have acted in good faith, good faith without substantial change is not enough. At this point, the Court does not anticipate that GHF will be in compliance with the white student enrollment as required by the Interim Order for the 2020-2021 school year.

### B. Facilities

The Court also finds that the Lincoln Prep facilities are a barrier to desegregation. Even prior to the conversion from the Grambling Lab Schools to Lincoln Prep, the United States presented evidence and expert testimony to the Court about the poor condition of the facilities at the former Grambling Lab Schools. As part of the transfer of desegregation obligations to Lincoln Prep, GHF agreed that it "must provide an academic and extracurricular setting in facilities that are comparable to those at schools in the surrounding area." [Doc. No. 287].

Additionally, from the very beginning, all parties agreed that GHF would have a greater chance of success with recruitment of white students if Lincoln Prep was not located on the campus of GSU. As part of the initial authorization order, the Court required GHF to "file a letter of financial commitment for the construction of new facilities no later than October 1, 2017." *See* [Doc. No. 230, p. 12].

However, Lincoln Prep did not obtain a financial commitment letter and remains located on the campus of GSU. The United States' facilities expert, Mr. Brewer, who had previously evaluated Lincoln Prep's facilities in comparison to AEP and the eight LPSB comparators, did so again prior the recent hearing. *See* [Doc. No. 323-2]; *see also* April 5, 2016 Brewer Expert Report [ Doc. 190-25]. Mr. Brewer concluded that "the inferior physical condition of Lincoln Prep, compared to the eight local public school facilities [he] observed and [AEP], places Lincoln Prep at a distinct disadvantage when competing with these schools for white students." [Doc. No. 323-2]; Apr. 17, 2019 Brewer Trial Dep. at 32:5–9. In the past three years, GHF has not made significant improvements to the Lincoln Prep facilities, nor has it obtained financing for a comprehensive renovation or to construct or purchase another facility off the GSU campus.

While Lt. Col. Ford credibly testified as to the difficulty of obtaining financing when the future of the school is uncertain, it has now become critical for GHF to move Lincoln Prep off campus with comparable facilities to its comparators if it has any chance of achieving desegregation. It cannot be disputed that the objectively inferior physical condition of Lincoln Prep places GHF at a disadvantage when recruiting white students. The condition and location of the facilities of Lincoln Prep must be addressed if the school is to be authorized for operation for the 2020-2021 school year.

### C. Academic Achievement

Finally, the Court has considered GHF's duty under the Interim Order to "ensure that it provides a quality education" at Lincoln Prep by taking "good faith steps" to "maintain[ ] an appropriate, re-designed curriculum and employing certified teachers whenever possible." [Doc. No. 287, § IV(D)].

Lt. Col. Ford and other GHF witnesses testified to the academic improvement at Lincoln Prep and, specifically, to the increase in its school performance score. The Court does not discount the value of the increased score or the efforts of teachers, faculty, and administration. However, Lincoln Prep remains an academically low-performing school. This, too, remains an area of concern for the Court.

### D. Compliance and Authorization for the 2020-2021 School Year

After reviewing the evidence presented, the briefs, and the arguments, the Court finds that GHF is not in compliance with the Court's Interim Order. If GHF fails to file a financial commitment letter by October 15, 2019, or fails to achieve a white student population of 20% by October 15, 2019, the Court is not likely to authorize GHF to operate Lincoln Prep on the

campus of GSU for the school year 2020-2021 or thereafter.[4] GHF further remains bound by the terms of the Interim Order, including the requirement of the vigorous and targeted recruitment of white students.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that GHF is authorized to operate Lincoln Prep on the campus of GSU for the 2019-2020 school year. The Court anticipates that it may be required to withdraw authorization unless GHF takes the steps set forth in this Memorandum Ruling and Order by October 15, 2019.

**IT IS FURTHER ORDERED** that the United States' Motion for Judgment of a Matter of Law [Doc. No. 353] is **DENIED** at this time, subject to re-urging at a later date.

**IT IS FURTHER ORDERED** that consideration of GHF's pending motions [Doc. Nos. 328 & 334] is **DEFERRED** at this time, subject to consideration after October 15, 2019, or earlier if circumstances change.

**MONROE, LOUISIANA**, this 14th day of June, 2019.

_Robert G. James_
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[4] The Court further contemplates that if GHF relocates to a premises off the campus of GSU, it will no longer be subject to the jurisdiction of this case or the orders of the Court thereunder.