UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

UNITED STATES OF AMERICA              CIVIL ACTION NO. 66-12071

VERSUS                                JUDGE ROBERT G. JAMES

LINCOLN PARISH SCHOOL BOARD,          MAG. JUDGE KAREN L. HAYES
ET AL.

MEMORANDUM RULING AND ORDER

Consistent with the Court's notice to counsel in its November 8, 2019 status conference [Doc. No. 372] and after having reviewed responses from the parties, the Court finds that it is appropriate to enter this Memorandum Ruling and Order barring Grambling High Foundation ("GHF") from operating Lincoln Preparatory School ("Lincoln Prep") on the campus of Grambling State University and further ordering the conditions discussed herein.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This is a long-standing desegregation case to which the United States of America ("the United States"), Louisiana State Superintendent of Education ("State Superintendent"), Louisiana Board of Elementary and Secondary Education ("BESE"), University of Louisiana System ("ULS"), Louisiana Board of Regents (the "Board of Regents"),[1] Grambling State University ("GSU"), and Louisiana Tech University ("La. Tech") remain parties.

On June 8, 1966, the United States filed a complaint in this Court against Defendant Lincoln Parish School Board ("LPSB"), seeking to desegregate its *de jure* dual public school system.  On July 28, 1966, this Court entered a decree permanently enjoining LPSB from

_____

[1]Collectively, the Court refers to these Defendants as "the State Defendants."

operating a racially segregated school system.   On August 1, 1969, the Court entered an order directing LPSB to "take affirmative action to disestablish all school segregation and to eliminate the effects of the dual school system" and to adopt a desegregation plan.

Neither the Grambling Lab Schools, a public laboratory school located on the campus of GSU, or the A.E. Phillips Laboratory School ("AEP"), a public laboratory school located on the campus of La. Tech, were parties to the original action.

As a result of further litigation, in 1980, this Court added the State Defendants, GSU (as operator of the Grambling Lab Schools), and La. Tech (as operator of AEP).   [Doc. Nos. 82-16, 82-17 & 82-20].   "The state became involved in this action because the laboratory schools are run by the Louisiana State Board of Education and the respective university officials." [Doc. No. 82-21].   "The racial composition of these two [lab] schools became an issue in the [LPSB] case" because of its role as a conduit for funds and materials to the lab schools, providing transportation to their students, and approving faculty selections.   *Id.* at p. 1.

On July 13, 1984, the Court entered a Consent Decree, agreed upon and signed by the United States, the State of Louisiana (the "State"), GSU, La. Tech, and LPSB.   The 1984 Consent Decree required GSU, La. Tech, and LPSB to take a number of actions intended to desegregate the laboratory schools at the two universities.   [Doc. No. 82-3, pp. 4-24].

For many years, no action was taken in this case with regard to any parties.   However, upon its own motion on August 14, 2008, the Court amended the 1970 Decree, reactivating this case and requiring LPSB to file an annual statistical report.   [Doc. No. 2].   On December 14, 2009, this Court ordered the United States to conduct a unitary status review.   *See* [Doc. No. 8]. During the course of that review, the United States identified continuing issues related to the

2

desegregation of the lab schools, which it summarized for the Court in its May 24, 2011 Status Report [Doc. No. 25].

On May 13, 2013, the United States filed a Motion for Further Relief [Doc. No. 82] seeking a new desegregation plan for the laboratory schools.  La. Tech and GSU opposed the United States' motion, and each university cross-filed for a declaration of unitary status [Doc. Nos. 97-98, 104-105].  LPSB filed a motion to dismiss itself from the litigation regarding the lab school issues [Doc. No. 102].  Following briefing on the parties' various motions, the Court directed the parties to engage in negotiations to attempt to resolve the lab school issues.  *See* [Doc. No. 118, pp. 1-2].

The United States proposed options to desegregate the lab schools to GSU and the other Defendants on November 12, 2013.  *See* [Doc. No. 122].  On January 6, 2014, the United States met with counsel for GSU and the other Defendants to further discuss the proposals to resolve the outstanding desegregation issues involving the lab schools.  *See id.* at p. 2.  The United States, GSU, and the other parties met with the Court on March 10, 2014, for further negotiations.  *See* [Doc. No. 124, pp. 2-3].  During the conference, GSU informed the Court and the parties that, in partnership with GSU and the City of Grambling, GHF had sought permission from LPSB to convert GSU's lab schools to a Type 3 charter school and would seek permission from BESE for a Type 2 charter after receiving LPSB's anticipated rejection.  *See id.* at p. 2.

GHF did not receive permission from LPSB to convert to a Type 3 charter school and proceeded with obtaining a Type 2 charter.  On August 12, 2015, GHF received conditional approval from BESE for a Type 2 charter school, pending Louisiana Department of Education ("LDOE") review.  After the State Superintendent confirmed that GHF met all standards for approval, GSU filed an Amended Motion and Brief [Doc. Nos. 170, 170-1] on January 27, 2016,

3

seeking the Court's authorization to convert the Grambling Lab Schools to a charter school and to transfer control and governance of the charter school to GHF.   The United States opposed GSU's Amended Motion to the extent that it sought to operate the charter school without any obligations to desegregate and to eliminate the vestiges of the *de jure* segregation.   *See* [Doc. No. 200].

On April 20, 2016, the Court conducted a hearing regarding GSU's Motion and Amended Motion [Doc. Nos. 157, 170].   *See* [Doc. No. 205].   On April 25, 2016, the Court issued a Ruling and Order granting GSU's motion in part and denying it in part.   *See* [Doc. No. 211]; [Doc. No. 212].   The Court granted GSU's request to close the lab schools at the end of the 2015-2016 school year, but denied GSU's request to transfer control of the former Grambling Lab Schools to GHF without desegregation obligations.   The Court granted the request "only if GHF accepts the transfer subject to GSU's desegregation obligations and under the other conditions detailed in this Ruling." [Doc. No. 211, pp. 8-9].   Those conditions included the following requirements: (i) GHF "will enroll in this matter immediately"; (ii) GSU, "while no longer operating the Laboratory Schools, will remain a party to this action to facilitate the transfer and to assist the Court with any issues that may arise with the charter school"; and (iii) GSU and GHF "will work with the United States to develop a new consent decree to replace the 1984 Consent Decree and to develop a plan which is reasonably calculated to address the goals of desegregation and to allow the new charter school to obtain unitary status." [Doc. No. 211, p. 8].

On July 19, 2016, the Court granted GHF's motion to intervene.    [Doc. No. 221].

On August 2, 2016, the parties participated in a settlement conference.   After the parties reached an impasse, GHF made an oral motion for authorization to open Lincoln Prep for the 2016-2017 school year.   *See* [Doc. No. 230, p. 7].   The United States opposed the oral motion. *See id.* at pp. 7-8.   After conducting an emergency hearing on August 2, the Court authorized GHF to begin operating Lincoln Prep as a K-12 charter school in the 2016-2017 school year, subject to several conditions: (i) Lincoln Prep "will have a baseline of 370 students"; (ii) GHF "will file a letter of financial commitment for the construction of new facilities no later than October 1, 2017"; and (iii) GHF and the United States "will file a proposed consent decree no later than September 6, 2016 . . . . [or] separate proposed desegregation plans for the charter school with argument in support thereof."   *Id.* at p. 12.

On August 15, 2016, the Court granted in part and denied in part GSU's Motion to Dismiss [Doc. No. 105].   To the extent that GSU moved the Court to find the Grambling Laboratory Schools unitary, the motion was denied as moot. [Doc. No. 234].   To the extent that GSU moved for its dismissal from this case based on its obligations to the Grambling Laboratory Schools, the motion was granted in part.   However, the motion was denied to the extent that GSU sought its complete dismissal from this case. The Court ruled that GSU remain a party to facilitate the transfer of the Grambling Laboratory Schools to GHF, to assist with any issues that may arise with the charter school, and to work toward developing a plan for the charter schools which is reasonably calculated to address the goals of desegregation and to allow the school to obtain unitary status.

On January 18, 2017, the Court found LPSB had achieved unitary status and dismissed the case against it.   However, GSU, GHF, La. Tech, and the State Defendants remained parties in this action.   *See* [Doc. Nos. 265 & 266].

There continued to be issues with the desegregation of Lincoln Prep.   During the 2016-2017 school year, Lincoln Prep had a white student enrollment of about 3.2%.   A hearing was held in this matter on July 20, 2017, after the United States and GHF failed to reach an agreement on certain provisions of a proposed order for the upcoming school year.   During the hearing, GHF orally moved for modification of those conditions of operation imposed in August 2016.   The United States opposed the motion and urged the Court to adopt the proposed order in its entirety.

On August 1, 2017, the Court issued a Memorandum Order [Doc. No. 287] granting in part and denying in part GHF's oral motion and issuing an Interim Order ("the Interim Order").   In part, the Interim Order provided that GHF "shall, by the 2020-2021 school year, increase the percentage of white students enrolled at Lincoln Prep, so that it is within plus or minus 20 percentage points of the percentage of white students enrolled in grades K-12 in LPSB's schools. GFH will thereafter exercise good faith efforts to maintain the percentage of white students enrolled in the school within that range."   [Doc. No. 287, pp. 11-12].   To reach the ultimate 2020-2021 school year target, beginning with the 2017-2018 school year, the Court limited black student enrollment to 360 students, but allowed GHF to enroll as many white students and students of other races as permitted by their state charter.   *Id.* at p. 13.   Additionally, the Court set white student enrollment targets for the 2017-2018 and 2018-2019 school years:[2]

> Beginning with the 2017-2018 school year, GHF will have a percentage enrollment of 8% white students. For the following school year, 2018-2019, GHF will have a percentage enrollment of 14% white students. GHF will take affirmative measures-via an actively managed enrollment process-to reach the annual white student enrollment targets for each entering kindergarten class and for higher grade levels.

---

[2]The Court did not set targets for the 2019-2020 school year, with the idea that the parties would continue to work together in good faith and would seek guidance and/or rulings from the Court if necessary.   *See* [Doc. No. 287, p. 19].

*Id.* at p. 12.   The Court set additional requirements for staffing, composition of the Board of Directors, facilities, quality of education, transportation, and extracurricular activities.   Finally, the Court continued the requirement that, on or before October 15 of each year, GHF must file a status report containing the identified information.

In October 2017, GHF filed its status report and exhibits.   [Doc. Nos. 302 & 303].   At that time, GHF had enrolled 31 white students or 7.3% of the student population.

In October 2018, GHF filed its status report and exhibits.   [Doc. Nos. 313 & 314].   At that time, GHF had enrolled 34 white students or 7.8% of the student population.   On October 30, 2018, the Court issued a minute entry [Doc. No. 316] setting a status conference for December 3, 2018.

On December 3, 2018, the Court held a status conference with counsel for the United States, GHF, and GSU and the Court's law clerk.   The Court set deadlines for information requested by the United States and further reminded counsel that GHF should be continuing to look for a new location for Lincoln Prep.

On February 7, 2019, in light of the appropriations lapse for Government agencies, including the DOJ, the Court granted an extension to February 28, 2019, for the United States to file a memorandum addressing GHF's status report and all additional information received.   The Court then extended this deadline to March 11, 2019, on the United States' motion. [Doc. No. 322].

On March 11, 2019, the United States filed a memorandum on GHF's compliance with the Interim Order. [Doc. Nos. 323, 324 & 325].

After reviewing the Lincoln Prep report and the United States' response, the Court had

serious concerns about Lincoln Prep's ongoing failure to reach complete compliance with the Court's prior desegregation orders.   Therefore, the Court set a telephone status conference.

On March 18, 2019, the Court held a status conference with counsel, setting a hearing for April 29, 2019, to address these concerns.   The Court also set discovery and briefing deadlines.

On March 21, 2019, GHF filed a Motion for Declaration of Unitary Status of Lincoln Prep [Doc. No. 328], contending that it has complied with all of the *Green* factors relevant to a finding of unitary status.

On March 22, 2019, GHF filed a Motion to Dismiss [Doc. No. 334], contending that the Court lacks subject matter jurisdiction because there is a lack of record evidence that the predecessor laboratory schools operated by GSU were *de jure* segregated.

On April 2, 2019, the Court granted the United States' opposed Motion to Stay Proceedings on GHF's two motions.   [Doc. No. 340].   However, the Court stayed only the United States' obligation to file opposition briefs.   To avoid duplicative evidentiary hearings, the Court ordered that GHF and the United States would be permitted to present evidence relevant either to the Court's *sua sponte* inquiry or to the motions.

After a tornado caused significant damage to the office and home of GHF's counsel, on April 25, 2019, the Court held a status conference with counsel and re-set the hearing for May 14, 2019.   [Doc. No. 343].   Trial briefs were timely filed before the hearing.   [Doc. Nos. 348, 349 & 352].

An evidentiary hearing was held on May 14-15, 2019.   The Court heard testimony, via live and video presentations, from GHF's expert, Dr. Joanne Hood; Lincoln Prep's director, Lt. Col. Gordon Ford; Lincoln Prep Senior Assistant Director, Melanie Colvin, and Assistant Director

Phadra Burks Blake; Dr. Birdex Copeland; and the United States' experts, Dr. Claire Smrekar and James Brewer.

On June 14, 2019, the Court issued a Ruling, finding that GHF is not in compliance with the orders of this Court, but allowing GHF to continue operation of Lincoln Prep for the 2019-2020 school year, given its good faith efforts.   The Court cautioned, however, that authorization for the 2020-2021 school year was subject to review without further hearing.    The Court denied the United States' Motion for Judgment of a Matter of Law [Doc. No. 353], subject to re-urging at a later date.   The Court also deferred consideration of GHF's pending motions [Doc. Nos. 328 & 334], subject to consideration after October 15, 2019, or earlier if circumstances change.

On October 25, 2019, GHF filed its annual status report and exhibits with the Court.   [Doc. Nos. 369, 370 & 371].   Since that time, counsel for the Department of Justice ("DOJ") has conducted a site visit with its experts, and the parties have engaged in some additional exchange of information.

On November 8, 2019, the Court held a status conference with counsel.   Participating were Jonathan Newton, attorney with the DOJ; Tyler Storms, attorney for GHF; Patricia Wilton, attorney with the BESE and Board of Regents; Ashley Butler, attorney with the LDOE; Winston DeCuir, counsel for GSU.   Also present was Law Clerk, Kayla Dye McClusky.   During that conference, the Court indicated its intent to issue an order prohibiting Lincoln Prep from operating on the campus of GSU after this school year. Counsel raised some logistical issues with relocation and temporary use of some services or facilities at GSU.   The Court ordered GHF to file, no later than December 2, 2019, a response to the Court's intended action, particularly addressing whether the logistical issues have been resolved or whether there are remaining issues or concerns for the

Court to address in its order.   The DOJ, and any other party which wished to do so, was ordered to reply to GHF's response no later than December 16, 2019.

Attorneys for the State agencies and departments indicated that they were present to monitor the proceedings and to address any issues related to the charter authorization to GHF. They did not anticipate filing a memorandum in reply to GHF's response.

On November 27, 2019, GHF filed an early response to the Court's intended action.   [Doc. No. 373].

On December 16, 2019, the DOJ filed a response to the Court's intended action.   [Doc. No. 375].

Having reviewed the responses of GHF and the DOJ and having received no other responses, the Court is prepared to enter an order in this matter.

## II.      LAW AND ANALYSIS

When first presented with a school desegregation case, a district court is charged with determining whether or not a school board (or governing authority) has maintained or facilitated a dual school system in violation of the Equal Protection Clause of the United States Constitution. U.S. CONST., Amend. XIV.   If the district court finds such a violation, then under *Brown v. Bd. of Educ. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483 (1954), and *Brown v. Bd. of Educ.*, 349 U.S. 294 (1955), the dual system must be dismantled, and the school board must "take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch."   *Green v. County Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430, 437-38 (1968).

Neither the local governing authority's nor a district court's duty ends with the initial

desegregation order.   Rather, there is a "continuing duty [for school officials] to eliminate the system-wide effects of earlier discrimination and to create a unitary school system untainted by the past." *Ross v. Houston Indep. Sch. Dist.*, 699 F.2d 218, 225 (5th Cir. 1983) (citing *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).   Likewise, the district court "retain[s] jurisdiction until it is clear that state-imposed segregation has been completely removed." *Id.* (citing *Green*, 391 U.S. at 439; *Raney v. Bd. of Educ.*, 391 U.S. 443, 449 (1968)); *see also Price v. Austin Indep. Sch. Dist.*, 945 F.2d 1307, 1314 (5th Cir. 1991) (We use the term "unitary" to refer to a school district that "has done all that it could to remedy the [prior] segregation caused by official action.") .

The goal of the district court is to return "schools to the control of local authorities at the earliest practicable date." *Freeman v. Pitts*, 503 U.S. 467, 490 (1992).   In discharging this duty, the district court considers the Supreme Court's "*Green* factors":   (1) faculty and staff assignments; (2) transportation; (3) extra-curricular activities; (4) facilities; and (5) student assignments.   *Green*, 391 U.S. at 435; *see also Bd. of Educ. of Okla. City Pub. Sch. v. Dowell*, 498 U.S. 237, 250 (1991).

"The District Court should address itself to whether the Board had complied in good faith with the desegregation decree since it was entered, and whether the vestiges of past discrimination had been eliminated to the extent practicable."   *Dowell*, 498 at  249-50; *Freeman*, 503 U.S. at 491; *Green*, 391 U.S. at 439; *Ross*, 699 F.2d at 225.

### A.  Subject Matter Jurisdiction

This case is unusual because it involved not only the local school board, but two state-created laboratory schools, AEP and the former Grambling Lab Schools, and the State educational

entities.  The Court has determined that LPSB has met its desegregation obligations, achieved unitary status, and dismissed it from the case.  The Court has further approved a consent order applicable to La. Tech and AEP, which provides that La. Tech may file a motion for dismissal within ninety (90) days of the submission of it October 15, 2021 report, assuming that it remains in compliance with the consent order.  Doc. No. 254].  However, GSU, GHF, and the State Defendants[3] remain active participants.

First, as it must, the Court addresses GHF's Motion to Dismiss and its contention that subject matter jurisdiction is lacking.  There is no factual dispute that LPSB formerly operated a *de jure* dual public school system, that a decree permanently enjoining LPSB from operating a racially segregated school system was first entered in 1966, that LPSB was ordered to dismantle its dual system and to eliminate all effects of that system in 1969, and that LPSB remained subject to those orders and their amendments until its dismissal in January 2017.

In 1980, the United States, with leave of Court, amended its Complaint in this action to add party Defendants on the basis that AEP "had been designated and was identifiable as a White School," while the Grambling Lab Schools,[4] located within three miles of AEP, were "designated and . . .identifiable as Black School[s]."[5]  [Doc. No. 82-3, 1984 Consent Decree].  There is no factual dispute that GSU, La. Tech, and the State Defendants were made part of the LPSB case in 1980 because the schools were physically located in Lincoln Parish; the schools were admittedly

---

[3]The State Defendants remain in the litigation because of AEP and Lincoln Prep.

[4]The elementary school was formerly known as Alma J. Brown, but the Court refers to the Grambling Laboratory Schools for consistency.

[5]Although GHF presented evidence through the testimony of Mindy Lewis that there was one white family whose children attended Grambling Laboratory Schools early in their history, it is clear that the Grambling Laboratory Schools were racially identifiable as black.

designated and identifiable by race; and LPSB served as a conduit for funds and materials to those schools, provided transportation to their students, and approved faculty selections.   The United States, the State, GSU, La. Tech, and LPSB all negotiated over the next four years "to arrive at a mutually agreeable plan which realistically promise[d] to desegregate" the two schools.   [Doc. No. 82-3, p. 4].   The 1984 Consent Decree set forth the actions to do just that.

Under these circumstances, the Court finds that it has subject-matter jurisdiction over the desegregation of the Grambling Laboratory Schools and their successor, GHF, pursuant to the Court's previous rulings and the agreement of the parties as to the facts.   Thus, GHF's Motion to Dismiss must be denied.

### B.   Unitary Status

Unfortunately, over the ensuing years, all steps practicable and those specific steps set forth in the 1984 Consent Decree were not taken to desegregate the laboratory schools, resulting in this Court's continued oversight.

In its motion filed with the Court prior to the evidentiary hearing, GHF argues that it is in compliance with the *Green* factors, should be found unitary, and the case against it should be dismissed.   The Court disagrees.

As previously indicated, no additional evidentiary hearing is necessary to address its *sua sponte* considerations or GHF's motions because much of the evidence and testimony presented at the latest hearing was already known to the Court, and there has been no indication from any remaining party that another hearing would result in a change in that evidence.

The Court further finds that additional briefing is not necessary.   The parties filed trial briefs at the time of the previous hearings and have, on numerous occasions, both at hearings and

13

during conferences, had the opportunity to provide more information and argue their positions to the Court.

At no time since GSU transferred the schools to GHF's operation has Lincoln Prep been in compliance with the white student enrollment as required by the Interim Order.   GHF is not in compliance now.   The Court further finds that the Lincoln Prep facilities are a barrier to desegregation.   This is so for two reasons:   the facilities are in the same poor condition at the former Grambling Lab Schools as they were while being operated by GSU[6] and the location of Lincoln Prep on the campus of a historically black university makes recruitment of white students more difficult.   Finally, the Court has previously found that, despite gains in academic achievement, Lincoln Prep remains a low-performing school, which is also a barrier to desegregation.

The facts adduced at the evidentiary hearing and provided to the Court in status conferences, reports, and briefs do not entitle GHF to a finding of unitary status, and its Motion for Declaration of Unitary Status of Lincoln Prep [Doc. No. 328] must be denied.

However, the Court's involvement cannot end here.   Rather, the Court has carefully considered its role with regard to desegregation while remaining cognizant of its duty to avoid interference with the lawful operation of a state charter school, as long as such school does not promote re-segregation or prevent the dismantling of the former *de jure* system.   To achieve that balance, the Court addresses the actions necessary to resolve this case.

---

[6] The Court does not ignore GHF's efforts to improve the facilities, but the fact remains that those facilities cannot be characterized as satisfactory at this point.

14

### III.      COURT ACTION

In light of the Court's findings, the Court will no longer authorize GHF to operate Lincoln Prep on the campus of GSU.   It is the Court's understanding that neither the DOJ, the BESE, the LDOE, the Board of Regents, or GHF has an objection to the operation of Lincoln Prep, as a charter school authorized by the State, in another location.   Specifically, GHF has indicated that it intends to relocate either to (1) a split usage campus that entails classrooms at New Living Word's school and a remodeled Fred's building on Highway 80 or (2) to a purchased new site, where it will begin construction as soon as possible.

The parties have raised concerns about use of GSU facilities and services on a temporary, transitional basis.   After reviewing those concerns, the Court approves the use of GSU cafeteria/food services for the preparation of food to be served at the new location of Lincoln Prep.   However, the Court denies GHF authorization for the continued use of GSU athletic facilities for basketball, and track and field events.   Continued use of the GSU facilities, even on a temporary, transitional basis, would only serve to continue the vestiges of *de jure* segregation which this Court is bound to address.   Lincoln Prep is permitted to attend programs and activities open and available to all local schools.

Subject to these conditions, the Court amends its previous orders addressing the racial demographics of Lincoln Prep.   GHF's acceptance of new students and the continued enrollment of existing students at Lincoln Prep will now be governed solely by the requirements of state law, so long as it otherwise remains in compliance with this Memorandum Order and does not engage in racially discriminatory practices.

15

In order to assure that these conditions are complied with and that all steps practicable have been taken to remedy the former dual system, GSU, GHF, and the State Defendants will remain parties and the Court will retain jurisdiction over this case until at least October 2021.[7]

## IV.    CONCLUSION

For the foregoing reasons,

IT IS ORDERED that GHF's Motion for Declaration of Unitary Status of Lincoln Prep [Doc. No. 328] and Motion to Dismiss [Doc. No. 334] are DENIED.

IT IS FURTHER ORDERED that authorization for GHF to operate Lincoln Prep on the campus of GSU for the 2020-2021 school year is DENIED.

IT IS FURTHER ORDERED that GHF is authorized to operate Lincoln Prep in another location for the 2020-21 school year.

IT IS FURTHER ORDERED that Lincoln Prep is permitted to use GSU's cafeteria/food service preparation services, as long as the meals are prepared for service at a location other than the GSU campus.

IT IS FURTHER ORDERED that Lincoln Prep is not permitted to use GSU athletic facilities beginning with the 2020-2021 school year except to the extent that it is permitted to attend programs and activities open and available to all local schools.

IT IS FURHTER ORDERED that, subject to these conditions, the Court AMENDS its previous orders addressing the racial demographics of Lincoln Prep.  GHF's acceptance of new students and the continued enrollment of existing students at Lincoln Prep will now be governed solely by the requirements of state law, so long as it otherwise remains in compliance with this

---

[7]As set forth above La. Tech also remains a party at this time.

16

Memorandum Order and does not engage in racially discriminatory practices.

IT IS FURTHER ORDERED that the Court retains jurisdiction of this matter until October 2021, at which time the Court will evaluate whether further orders are appropriate, or if GSU and GHF can be dismissed from this litigation. GSU, GHF, La. Tech, and the State Defendants all remain parties at this time.

**MONROE, LOUISIANA**, this 8th day of January, 2020.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

17