**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION NO. 66-12071** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **LINCOLN PARISH SCHOOL BOARD, *et al*.,** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**
**DECLARING UNITARY STATUS AND DISMISSING ACTION**

Pending before the Court are motions to dismiss filed by Louisiana Tech University ("LTU") on behalf of A.E. Phillips Laboratory School ("AEP") [doc. #408] and Grambling High Foundation ("GHF") on behalf of Lincoln Preparatory School [doc. #398]. Plaintiff United States of America (the "United States") does not oppose the motions. For the following reasons, the Court finds that LTU and GHF have both complied with their relevant orders, the Fourteenth Amendment to the United States Constitution and applicable federal law and, therefore, have effectively eradicated to the extent practicable any remaining vestiges of the prior *de jure* segregated education system in the remaining areas under the *Green* factors. This Court's findings entitle LTU and GHF to declarations of full unitary status, withdrawal of judicial supervision, and entry of a final judgment dismissing them from this action. Further, as the State Defendants have only remained in the litigation because of AEP and Lincoln Prep, and Grambling State University has only remained in the litigation because of Lincoln Prep, they, too, will be

dismissed.

For the following reasons,

**IT IS ORDERED** that the motions to dismiss are GRANTED, and LTU and GHF are declared UNITARY in all regards, and all remaining Defendants are DISMISSED from this case**.**

## I. PROCEDURAL HISTORY

Since this public school desegregation action was initiated by the United States in 1966, the Court has issued multiple orders designed to disestablish the former *de jure* segregated system of public elementary and secondary education in Lincoln Parish. The history of this case has been recounted on multiple occasions and a full recitation is unnecessary here; however, the Court incorporates by reference the historical facts. The Court does recite the following facts pertinent to the pending motions.

In 1980, the United States, with leave of Court, amended its Complaint in this action to add party Defendants on the basis that AEP, operated by LTU, "had been designated and was identifiable as a White School," while the Grambling Lab Schools, [operated by Grambling State University ("GSU"),] located within three miles of AEP, were "designated and . . .identifiable as Black School[s]." [Doc. # 82-3, 1984 Consent Decree]. There is no factual dispute that GSU, LTU, and the State Defendants were made part of the LPSB case in 1980 because the schools were physically located in Lincoln Parish; the schools were admittedly designated and

identifiable by race; and the Lincoln Parish School Board ("LPSB") served as a conduit for funds and materials to those schools, provided transportation to their students, and approved faculty selections. The United States, the State, GSU, LTU, and LPSB all negotiated over the next four years "to arrive at a mutually agreeable plan which realistically promise[d] to desegregate" the two schools. [Doc. # 82-3, p. 4].

On July 13, 1984, the Court entered a Consent Decree ("1984 Consent Decree"), agreed upon and signed by the United States, State of Louisiana (the "State"), GSU, LTU, and LPSB. The 1984 Consent Decree required GSU, Louisiana Tech, and LPSB to take a number of actions intended to desegregate the laboratory schools at the two universities. 1984 Consent Decree at 4-24 [Doc. No. 82-3].

Over the years, that result was not achieved, unfortunately.

Beginning in late 2008, the Court undertook a review of all the remaining desegregation cases in the Monroe Division, including this case. As a result, the Court conducted a number of conferences and hearings and issued orders pertinent to LPSB, LTU, GSU, and, later, GHF.

With regard to the instant motions, in August 2016, the Court authorized the operation of the formerly *de jure* segregated Grambling Laboratory Schools ("Grambling Lab Schools") as a K-12 charter school named Lincoln Preparatory School ("Lincoln Prep") by GHF. GHF thereafter became, and remains, a party to this litigation. GSU and the State Defendants also

remained parties. The Court's authorization of the operation of Lincoln Prep was subject to certain conditions, including the condition that Lincoln Prep accept the desegregation obligations of the Grambling Lab Schools and that the United States and GHF meet in good faith to try to prepare a new consent order. Despite their efforts, the parties were unable to reach agreement.

In the meantime, the United States and LTU were able to reach agreement. Therefore, on November 1, 2016, the Court entered a Consent Order [doc. #216] with regard to the obligations of LTU and AEP, finding as follows:

> Having found that Louisiana Tech and the State Defendants have satisfied their desegregation obligations in the areas of transportation and extracurricular activities in the operation of A.E. Phillips, the Court hereby withdraws its supervision over those areas of operation of A.E. Phillips. With respect to A.E. Phillips, continued judicial supervision of Louisiana Tech and the State Defendants will be limited to student enrollment, facilities, faculty, and staff, and the implementation of this Consent Order.
>
> The United States, Louisiana Tech, and the State Defendants agree to negotiate in good faith all disputes that may arise, and any party will have the right to seek judicial resolution of all issues related to compliance with this Consent Order. The Court may amend this Consent Order upon joint motion of the United States, the State Defendants, and Louisiana Tech, upon motion of any of them, or *sua sponte*.
>
> Louisiana Tech and the State Defendants may move for dismissal of this Court's supervision of A.E. Phillips on the issues of student enrollment, facilities, faculty, and staff upon full compliance with the terms of this Consent Order, a showing that Louisiana Tech and State Defendants have taken all practicable measures to desegregate A.E. Phillips, and a showing that Louisiana Tech has not taken any action that impedes the orderly desegregation of A.E. Phillips or violates the Fourteenth Amendment to the U.S. Constitution with respect to the operation of

> A.E. Phillips. Such motion may be filed with this Court no sooner than ninety (90) days after the submission of Louisiana Tech's October 15, 2021 court report.

[doc. #254].

On January 18, 2017, upon joint motion of the United States and LPSB, the Court entered a Memorandum Order [doc. #266] and Judgment [doc. #267], finding that the LPSB had achieved unitary status in all regards, terminating supervision, and dismissing it from this lawsuit. However, supervision of LTU and GHF remained in place.

After considerable efforts, including a settlement conference with Magistrate Judge Karen L. Hayes, the United States and GHF were unable to reach agreement on a consent order governing remaining desegregation obligations. Therefore, after receiving evidence, the Court issued an order [doc. #287] on August 1, 2017, governing the obligations of the parties thereto. The order was subsequently amended and further proceedings were had.

On January 8, 2020, the Court issued a Ruling and Order [doc. # 376 ] which provided as follows:

> In light of the Court's findings, the Court will no longer authorize GHF to operate Lincoln Prep on the campus of GSU. It is the Court's understanding that neither the DOJ, the BESE, the LDOE, the Board of Regents, or GHF has an objection to the operation of Lincoln Prep, as a charter school authorized by the State, in another location. Specifically, GHF has indicated that it intends to relocate either to (1) a split usage campus that entails classrooms at New Living Word's school and a remodeled Fred's building on Highway 80 or (2) to a purchased new site, where it will begin

> construction as soon as possible.
>
> The parties have raised concerns about use of GSU facilities and services on a temporary, transitional basis. After reviewing those concerns, the Court approves the use of GSU cafeteria/food services for the preparation of food to be served at the new location of Lincoln Prep. However, the Court denies GHF authorization for the continued use of GSU athletic facilities for basketball, and track and field events. Continued use of the GSU facilities, even on a temporary, transitional basis, would only serve to continue the vestiges of *de jure* segregation which this Court is bound to address. Lincoln Prep is permitted to attend programs and activities open and available to all local schools.
>
> Subject to these conditions, the Court amends its previous orders addressing the racial demographics of Lincoln Prep. GHF's acceptance of new students and the continued enrollment of existing students at Lincoln Prep will now be governed solely by the requirements of state law, so long as it otherwise remains in compliance with this Memorandum Order and does not engage in racially discriminatory practices.
>
> In order to assure that these conditions are complied with and that all steps practicable have been taken to remedy the former dual system, GSU, GHF, and the State Defendants will remain parties and the Court will retain jurisdiction over this case until at least October 2021.

[doc. #376].

On November 5, 2021, GHF filed the instant motion to dismiss [doc. #398]. During a status conference with Magistrate Judge McClusky on November 10, 2021, to discuss the motion and other issues, she ordered that the notice of motion setting be vacated and that a briefing schedule be set following the anticipated filing of a motion to dismiss by LTU in January 2022.

On January 31, 2022, LTU also filed its motion to dismiss [doc. #405].

On February 1, 2022, GHF filed a supplemental affidavit in support of its motion. [doc.

#409]. On February 11, 2022, GHF filed a supplemental memorandum. [doc. #411].

On March 14, 2022, the United States filed a response indicting that it does not oppose either motion. [doc. #412].

## II. LAW AND ANALYSIS

### A. Legal Standards

When determining whether a public school district has achieved unitary status, the court's ultimate inquiry is whether the district has (1) fully and satisfactorily complied in good faith with the court's desegregation orders for a reasonable time; (2) eliminated the vestiges of the prior *de jure* segregation to the extent practicable; and (3) demonstrated a good faith commitment to the whole of the court's order and to the provisions of the United States Constitution and federal law which were the basis for judicial intervention in the first instance.[1] The United States Supreme Court has identified six (6) areas of operation, commonly referred to as the "*Green* factors," which must each be addressed when making the determination as to whether full unitary status has been achieved: (1) student assignment; (2) faculty assignment; (3) staff assignment; (4) transportation;

[1] *See Missouri v. Jenkins*, 515 U.S. 70, 88-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992); *Board of Educ. of Oklahoma City Pub. Sch., Indep. Sch. Dist. No. 89 v. Dowell*, 498 U.S. 237, 248-50 (1991).

(5) extracurricular activities; and (6) facilities.[2] Once the court determines that the facts reveal no continued racial discrimination in any of these areas of operation and the school board has, in good faith, desegregated its schools to the extent practicable, the court may declare the district fully unitary, withdraw judicial supervision, and dismiss the action.[3]

**B. Analysis**

**1. AEP**

The Court previously declared AEP unitary in the areas of transportation and extracurricular activities and ordered specific remedial measures. In its motion, LTU detailed the compliance of AEP with those measures.

**a. Student Enrollment**

First, LTU has met the requirement of the Consent Order that "[b]y the beginning of the 2020-2021 school year, [LTU] shall increase the percentage of black students enrolled at [AEP] so that it is within plus or minus 20 percentage points of black students enrolled in grades K-8 in [LPSB's] schools." Consent Order at 22 [Doc. #254]; 2021-22 Annual Report [Doc. #397]; [Doc. #408, *Exhibit A - Affidavit of Dr. Jenny Blalock*]. Additionally, LTU established targets for each incoming kindergarten class, implemented a recruitment plan to advertise and reach out to the

---

2 *Green v. County of Sch. Bd. of New Kent Cnty.*, 391 U.S. 430, 435-42 (1968): *Jenkins*, 515 U.S. at 88; *Dowell*, 498 U.S. at 250.
3 *See Freeman*, 503 U.S. at 490-91; *see also Price v. Austin Indep. Sch. Dist.*, 945 F.2d 1307, 1314 (5th Cir.1991).

African American community, increased overall black student enrollment, reduced barriers to black student enrollment through tuition assistance and other actions, and modified classroom placements within each grade to better reflect parish student demographics.

**b. Faculty and Staff**

The Consent Order requires AEP to conduct non-discriminatory hiring practices and take several affirmative steps to recruit black faculty and staff to the school with the goal of "increas[ing] the percentage of black faculty and staff members to a level comparable to that in LPSB's schools[.]" [Doc. #254, pp. 19, 24]. AEP made a good faith effort with its hiring and recruitment efforts since the entry of the Consent Order in November of 2016 to result in a comparable level of staffing and faculty.

**c. Facilities**

To address the expansion of grades, AEP had wide discretion and flexibility to accomplish facility needs. Overall, LTU has expended over $1.2 million dollars in facility upgrades, and, along with use of one additional LTU classroom, now has two classes for every grade.

**d. Monitoring and Reporting**

Pursuant to the Consent Order, Louisiana Tech was required to file an annual report by October 15th with the Court and with the United States, to provide supplemental reports to the United States as requested or necessary, to preserve records for the duration of the Consent Order, and to

host the United States for site visits. [Doc. #254, pp. 32-33]. AEP has complied in good faith with the monitoring and reporting requirements of the Consent Order, timely filing its annual reports; providing supplemental reports on various topics to the United States in January of 2019, December of 2019, November of 2020, and December of 2021; and hosting site visits in November of 2017, November of 2018, and October of 2019.

**2. GHF**

Because of the nature of the proceedings in this case, an analysis of GHF's efforts does not fit the *Green* factors as precisely. However, the Court's (and the United States') greatest concern was that Lincoln Prep establish itself as a separate entity from the former Grambling Laboratory Schools and independent of GSU. GHF has presented evidence to show that it has made good faith efforts to do so and that its plans will further those efforts.

Specifically, GHF provided an affidavit [doc. #409-2] from Richard Gallot, President of GSU, confirming that Lincoln Prep has not used GSU facilities since the times set forth in the Order. Coach Glen Hall has further corroborated Mr. Gallot's affidavit, detailing how it has relied on several churches in Lincoln Parish for basketball games (New Living Word), graduation (Temple Baptist Church), and classroom space (Trinity United Methodist Church, Grace United Methodist Church, New Living Word, and Calvary Baptist Church) during its transition to the temporary and permanent campuses. [doc. #409-1]. While GHF has obtained food services

from GSU, the food was merely prepared on campus and then provided to the children attending Lincoln Prep at its location(s).

As detailed in the Affidavit [doc. #409] of Gordan Ford , a new campus will be completed that will allow GHF to maintain independence from GSU even without community support from other churches and non-profits. GHF will cease using GSU's cooking facilities on or about October 3, 2022. GHF will have its own football and basketball facilities. GHF will have its own permanent classrooms, administrative offices, and library. While GHF has not relied on GSU for support during its transition, it will have no need to rely on other outside entities to perform its functions after construction of the permanent campus is finally complete on or about late January or early February of 2023. After that time, there will be no need for any restrictions, as there will be no need to use outside facilities.

Under these circumstances, the Court finds that GHF has acted in good faith and has taken the steps necessary to end the Court's oversight.

## III. FINAL TERMINATION

Having found that both LTU and GHF have satisfied their individual desegregation obligations in the remaining areas, the Court hereby declares LTU and GHF to be unitary, dismisses all remaining injunctions, and withdraws supervision. The Court further finds that LTU and GHF are entitled to full and final dismissal from this action. Finally, as GSU and the State

Defendants only remained parties to this litigation to the extent necessary to facilitate the desegregation of AEP and Lincoln Prep, they are also entitled to a full and final dismissal from this action.

A final judgment dismissing all remaining parties shall issue.

**MONROE, LOUISIANA, this 21st day of March, 2022.**

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE